**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

JASON REED

              Plaintiff,

      v.

EMPIRE AUTO PARTS, INC., *et al*.

            Defendants.

CIVIL ACTION NO.: 1:13-cv-05220-RMB-AMD

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY THIS MATTER AS A
COLLECTIVE ACTION PURSUANT TO §216(b) OF THE FLSA AND TO CERTIFY
THIS MATTER AS A CLASS ACTION PURSUANT TO RULE 23(B)(3)**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

   I.    STATEMENT OF FACTS IN SUPPORT OF MOTION ................................................. 2

   II.    LEGAL ARGUMENT ................................................................................... 11

     A.    Conditional certification under the FLSA ................................................. 11

     B.    Meal breaks under the FLSA .................................................................... 15

     C.    Conditional certification should be granted because Named Plaintiff Reed has met his lenient burden to demonstrate that he is similarly situated to all other Operators................ 15

     D.    The instant matter should be certified as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3). ................................................................................ 18

     E.    The Proposed Class Meets the Numerosity Requirement of Rule 23(a)(1). ............. 19

     F.    The Proposed Class Meets the Commonality Requirement of Rule 23(a)(2). ........... 20

     G.    The Proposed Class Meets the Typicality Requirement of Rule 23(a)(3)................. 21

     H.    The Proposed Class Meets the Adequacy Requirement of Rule 23(a)(4). ................ 21

     I.    The Proposed Class Meets the Predominance Inquiry of Rule 23(b)(3)...................... 22

     J.    The Proposed Class Meets the Superiority Requirements of Rule 23(b)(3). ............... 24

     K.    This Court should facilitate notice to all class members. ........................................... 25

     L.    Notice should be sent to all individuals who have worked for Defendants as Delivery Drivers.................................................................................................. 25

CONCLUSION.............................................................................................................. 26

## **TABLE OF AUTHORITIES**

### **Cases**

*Altenbach v. Lube Ctr., Inc.*, 2009 U.S. Dist. LEXIS 106131 (M.D. Pa. Nov. 13, 2009)........... 29

*Amchem Products v. Windsor*, 512 U.S. 591, 625-626 (1997).................................................... 25

*Aquilino v. Home Depot, Inc.*, 2006 U.S. Dist. LEXIS 66084 at *5-6 (D.N.J. Sept. 6, 2006)..... 16

*Aquilino v. Home Depot, U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 15759 (D.N.J. Feb. 15, 2011).... 12

*Beauchamp v. Penn Mut. Life Ins. Co.*, 2011 U.S. Dist. LEXIS 83374, at *14 (E.D. Pa. July 29, 2011) ................................................................................................................................ 15, 19

*Bramble v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 39457, 12-13 (E.D. Pa. Apr. 11, 2011) ................................................................................................................................................ 12, 14

*Camesi v. Univ. of Pittsburgh Med. Ctr.*, 2009 U.S. Dist. LEXIS 40571 (W.D. Pa. May 14, 2009) ................................................................................................................................................ 15

*Chabrier v. Wilmington Fin., Inc.*, 2006 U.S. Dist. LEXIS 90756 (E.D. Pa. Dec. 13, 2006) ...... 29

*Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ............................... 22

*Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008)......................... 23

*Dugan v. Towers, Perrin, Forster & Crosby, Inc.*, No. 09-5099, 2013 U.S. Dist. LEXIS 136305, at *11 (E.D. Pa. Sept. 24, 2013)................................................................................................ 26

*Gaiteri v. Wyo. Valley Health Care Sys.*, 2013 U.S. Dist. LEXIS 177932 (M.D. Pa. Dec. 19, 2013) ................................................................................................................................................ 29

*Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. Pa. 2011)...................................................... 27

*Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (U.S. 1982) ..................................... 20, 25

*General Tel. Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318 (1980) ............................................ 22

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc*, 525 Fed. Appx. 94, 100-101 (3d Cir. N.J. 2013) ... 25

*Guillen v. Marshalls of MA, Inc.,* 750 F. Supp. 2d 469, 2010 U.S. Dist. LEXIS 121419 (S.D.N.Y. Nov. 16, 2010) ............................................................................................................................. 15

*Harriel v. Wal-Mart Stores, Inc.,* Civ. A. No. 11-2510, 2012 U.S. Dist. LEXIS 97527 (D.N.J. July 13, 2012)................................................................................................................................ 13

*Harris v. Healthcare Servs. Group, Inc.*, 2007 U.S. Dist. LEXIS 55221 (E.D. Pa. July 31, 2007) ................................................................................................................................................ 15

*Hayes v. Wal-Mart Stores, Inc.,* 725 F.3d 349, 353-354 (3d Cir. N.J. 2013) ............................... 21

*Herring v. Hewitt Assocs.*, 2007 U.S. Dist. LEXIS 53278, at *12-13 (D.N.J. July 24, 2007) ..... 16

*Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)................................................. 11

*Holley v. Living*, Civ. A. No. 12-70335, 2012 U.S. Dist. LEXIS 70335 (E.D. Pa. May 18, 2012) ................................................................................................................................................ 14

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. Pa. 2008)......................... 21

*In re Imprelis Herbicide Mktg.*, 2013 U.S. Dist. LEXIS 149323 (E.D. Pa. Oct. 17, 2013) ......... 26

*Knepper v. Rite Aid Corp.*, 675 F.3d 249, 260 (3d Cir. Pa. 2012)................................................ 20

*Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 311 (3d Cir. 1998) ........................................ 24

*Levya v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013)........................................................ 26

*Lugo v. Farmer's Pride Inc.*, 2008 U.S. Dist. LEXIS 17565, at *3 (E.D. Pa. Mar. 7, 2008) ....... 12

*Marcus v. BMW of N. Am.*, LLC, 687 F.3d 583, 597 (3d Cir. N.J. 2012) ..................................... 23

*Morisky v. Pub. Sev. Elec. and Gas Co.*, 111 F. Supp. 2d 493, 496 (D.N.J. 2000) ...................... 11

*Parker v. NutriSystem, Inc.*, 2008 U.S. Dist. LEXIS 74896, at *1 (E.D. Pa. Sept. 26, 2008)...... 12

*Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 67 (E.D. Pa. 2009) .................................................. 15

*Ritzer v. UBS Fin. Servs.*, Inc., Civ. A. No. 08-1235, 2008 U.S. Dist. LEXIS 71635 (D.N.J. 2008). ........................................................................................................................................ 13

*Scott v. Bimbo Bakeries, USA, Inc.*, No. 10-3154, 2012 U.S. Dist. LEXIS 26106, at *23 (E.D. Pa. Feb. 29, 2012) ............................................................................................................................ 14

*Steinberg v. TD Bank, N.A.*, Civ. A. No. 10-5600, 2012 U.S. Dist. LEXIS 89086 at *14 (D.N.J. 2012) ........................................................................................................................... 13, 14, 29

*Stoneback v. ArtsQuest*, 2013 U.S. Dist. LEXIS 86457 at *27 (E.D. Pa. June 19, 2013) ........... 22

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011)...................................................... 26

*Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. Pa. 2011) ........................... 13

*Szczubelek v. Cendant Mortgage Corp.*, 215 F.R.D. 107 (D.N.J. 2003) .................................... 22

*Titchenell v. Apria Healthcare Inc.*, 2011 U.S. Dist. LEXIS 129475 (E.D. Pa. Nov. 8, 2011).... 20

*Tyger, et al. v. Precision Drilling Corp., et al.*, M.D. PA., no. 11-1913 .............................. 15, 19

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ................................................... 21

*Williams v. Aramark Sports, LLC*, 2011 U.S. Dist. LEXIS 102173 at *10 (E.D. Pa. 2011)........ 24

## Statutes

29 U.S.C. § 207........................................................................................................................... 16

29 U.S.C. §216(b) ........................................................................................................................ 11

## Regulations

29 C.F.R. § 785.19(a)................................................................................................................... 16

## Rules

Fed. R. Civ. P. 23(a)(4)................................................................................................................ 24

Fed. R. Civ. P. 23(b)(3)................................................................................................................ 26

Fed. R. Civ. Pro. 23(c)(2)(b)........................................................................................................ 29

## <u>INTRODUCTION</u>

On August 30, 2013, Jason Reed (hereinafter "Named Plaintiff Reed"), a former employee of Defendants Empire Auto Parts, Inc., *et al*. (hereinafter collectively referred to as "Defendants") filed suit against Defendants asserting that Defendants violated the Fair Labor Standards Act ("FLSA"), and the New Jersey Wage and Hour Law and New Jersey Wage Payment Law (collectively referred to as "New Jersey Wage Laws").

Defendant Empire Auto Parts, Inc. is an automotive parts distributor and maintains 16 warehouse distribution centers and satellite offices throughout the northeastern United States, including a satellite warehouse in Cinnaminson, New Jersey.  Defendants employ delivery drivers to deliver their parts to retailers, their customers.  Named Plaintiff Reed and those similarly situated are current and former full-time delivery drivers of Defendants who worked for Defendants within the three years prior to the filing of the instant action (hereinafter collectively referred to as "Drivers").  At all times relevant herein, Defendants maintained a uniform policy and practice of automatically deducting 30 minutes of paid time per shift from the pay of Named Plaintiff Reed and Delivery Drivers for meal breaks which were regularly not taken.

Named Plaintiff Reed and Drivers are current and former hourly, non-exempt employees. Moreover, Named Plaintiff Reed and Drivers regularly worked and received compensation for at least 40 hours per workweek.  Therefore, Defendants' deduction of 30 minutes of compensable time per shift from the pay of Named Plaintiff Reed and Drivers resulted in Defendants failing to pay them at least one and one-half times their regular rate for all hours worked in excess of 40 hours per workweek.  Accordingly, Defendants' uniform meal break policy and practice violated the overtime provisions of the Fair Labor Standards Act and the New Jersey Wage Laws.

1

Named Plaintiff Reed seeks to bring this action as a collective action under the Fair Labor Standards Act and a class action under Rule 23(b)(3) for violations of the New Jersey Wage Laws.  Named Plaintiff Reed files the instant motion seeking this Court to certify the instant action as a collective action and class action.

## I.   STATEMENT OF FACTS IN SUPPORT OF MOTION

1.     Named Plaintiff Reed worked for Defendants as a full-time delivery driver from in or around April 2010 to in or around February 2013 at Defendants' warehouse located in Cinnaminson, New Jersey (hereinafter "Cinnaminson Warehouse").  *See See* Named Plaintiff Reed's Complaint and Defendants' Answer, *attached hereto* as Exhibit A at ¶¶ 28, 30.

2.      Named Plaintiff Reed was a non-exempt, hourly employee of Defendants.  *See* Exhibit A at ¶¶ 32-34, 36, 38, 40; Named Plaintiff's Pay Records, *attached hereto* as Exhibit B at D00099-D000100.

3.     During Named Plaintiff Reed's employment, Named Plaintiff Reed earned a base hourly rate of between $12.00 and $13.75 per hour.  *See* Named Plaintiff's Sworn Declaration, *attached hereto* as Exhibit C at ¶ 4; Exhibit B.

4.     Named Plaintiff Reed asserts that Defendants violated the FLSA and New Jersey Wage Laws by utilizing a uniform and unlawful pay policy whereby Defendants failed to pay Named Plaintiff Reed 30 minutes of compensable time each shift due to automatic deductions for meal breaks which were not taken. *See* Exhibit A at ¶¶ 44-49, 51-53 of Complaint.

5.     Per Defendants' uniformly applied written policy, the primary responsibilities of Named Plaintiff and Drivers was "to operate appointed delivery vehicles safely, efficiently, and appropriately assure safe transportation of parts, returns, and collections from various specified

destinations and [Defendants'] corporate offices." *See* Defendants' Policy Regarding Delivery Driver Duties and Responsibilities, *attached hereto* as Exhibit D.

6.    Per Defendants' uniform written policy, "the normal work schedule for all employees [including Drivers] is 8 hours a day, 5 days a week." *See* Excerpts from Defendants' Employee Handbook, *attached hereto* as Exhibit E.  Per Defendants' uniformly applied policy, "[t]he pay week starts at the beginning of [Drivers'] shifts on Friday and includes all work [they] perform up to the close of business on Thursday," *See* Id.

7.    During Named Plaintiff Reed's employment with Defendants, Named Plaintiff Reed worked a work schedule of 8 hours a day, 5 days a week.  *See* Named Plaintiff's Time Records, *attached hereto* as Exhibit F; Exhibit C at ¶¶ 13-14.

8.    Per Defendants' uniformly written applied policy, "[d]rivers . . .  are provided with a 30 minute unpaid lunch break for meals during each work period." *See* Exhibit E.

9.    During Named Plaintiff Reed's employment with Defendants, Named Plaintiff Reed worked a scheduled shift lasting 8.5 hours long.  *See* Exhibit C at ¶¶ 13-14.  Initially, Named Plaintiff Reed's scheduled work period began at 8:00AM and ended at 4:30PM.  *See* Id. at ¶ 14; Interview Checklist, *attached hereto* as Exhibit G; Exhibit F.  For a period of time during Named Plaintiff Reed's employment, Named Plaintiff Reed's work period was changed to begin at 7:30AM and end at 4:00PM.  *See* Exhibit C at ¶ 14; Exhibit F.

10.    Accordingly, at all times relevant, Named Plaintiff Reed's work periods were scheduled to last 8.5 total hours per day, comprised of 8 work hours and 30 minutes for an unpaid "meal break," 5 days per workweek.  *See* Exhibit C at ¶¶ 13-14, Exhibit F.

11.    All Drivers completed shifts of 8.5 hours per workday, comprised of 8 work hours and 30 minutes for an unpaid "meal break", 5 days per workweek.  *See* Exhibit E; Exhibit C at ¶¶

26-27. Put another way, all weeks worked by Drivers were comprised of 40 work hours and 2.5 hours of 30-minute unpaid "meal breaks."  *See* Id.

12.     The scheduled work periods of most of the Drivers who worked alongside Named Plaintiff at Defendants' Cinnaminson Warehouse during his employment were as follows:

   a.   Richard Segarra: 7:30AM – 4:00PM

   b.   Jeffrey Jones: 7:30AM – 4:00PM

   c.   Kenneth Tongue: 7:30AM – 4:00PM

   d.   Michael Diamante: 7:30AM – 4:00PM

   e.   David Williamson: 8:00AM – 4:30PM

   f.   James Robinson: 7:30AM – 4:00PM

   g.   Jose Colon: 8:00AM – 4:30PM

*See* Email to Defendants' General Manager, Steve Moskal, Regarding Drivers' Work Hours, *attached hereto* as Exhibit H;. Exhibit C at ¶¶ 26-27.

13.     Per Defendants' uniformly applied policy, Defendants required Named Plaintiff Reed and all Drivers "to clock-in and clock-out upon entry in and upon departure from the warehouse."  *See* Exhibit F; Exhibit I at No. 2.

14.     Per Defendants' uniformly applied policy, Defendants automatically deducted 30 minutes of paid time from Named Plaintiff Reed and the Drivers each workday for an alleged 30-minute "meal break."  *See* Defendants' Responses to Named Plaintiff's Interrogatories, *attached hereto* as Exhibit I at Nos. 2, 6; Exhibit F.

15.     Named Plaintiff Reed regularly worked more hours than the 40 work hours per workweek for which Defendants scheduled him.  *See* Exhibit F; Exhibit C at ¶ 18.  When Named Plaintiff Reed worked over 40 hours in a workweek (exclusive of the 2.5 hours per week that

Defendants designated as unpaid meal breaks and deducted from his total hours), Defendants paid Named Plaintiff Reed overtime wages of one and one-half times his regular rate for each hour he worked in excess of 40.  *See* Exhibit B; Exhibit F.

16.     Drivers employed at Defendants' Cinnaminson Warehouse also regularly worked over 40 work hours each workweek.  *See* Exhibit H; Exhibit C at ¶ 26.  For example, on Thursday, December 29, 2011 (the last day of the pay week), all six delivery drivers employed at the Cinnaminson Warehouse at the time, including Named Plaintiff Reed, worked in excess of their scheduled work periods.  *See* Exhibit H.  Moreover, the hours they each worked in excess of their scheduled work periods were also hours worked in excess of 40 hours in that workweek (exclusive of the 30-minute unpaid meal breaks) and designated as compensable overtime by Defendants.  *See* Id.

17.     Accordingly, as Named Plaintiff Reed and Drivers regularly worked at least the hours required by their scheduled work periods (comprised of 40 work hours plus 2.5 additional hours which Defendants designated as "meal breaks"), any 30-minute meal break that Named Plaintiff Reed or any of the Drivers did not take should have been designated as compensable overtime and paid at a rate of one and one-half times their regular rate.

18.     During Named Plaintiff Reed's employment with Defendants, Named Plaintiff Reed rarely, if ever, took an uninterrupted, 30-minute meal break.  *See* Exhibit C at ¶ 17.

19.     Per Defendants' uniformly applied written policy, the work vehicles driven by Named Plaintiff Reed and all other Drivers were equipped with GPS tracking units.  *See* Defendants' GPS Acknowledgement Forms, *attached hereto* as Exhibit J; *See* GPS Records, *attached hereto* as Exhibit K; Exhibit C at ¶ 21.  Defendants used the GPS tracking units to monitor and record, among other values, Named Plaintiff Reed's and the Drivers' real-time

5

vehicle location, time spent driving, time spent idling, time spent stopped, route taken, miles driven, and speed.  *See* Id.

20.     Therefore, Defendants knew the exact location of the work vehicles driven by Named Plaintiff Reed and Drivers at all times as well as how long they spent driving or stopped. *See* Id.  Accordingly, although Named Plaintiff Reed and the Drivers could not clock in or out for meal breaks using Defendants' time clock because they were away from Defendants' warehouses, Defendants were able to easily determine whether they took an uninterrupted 30-minute meal break while they were out on their routes.  *See* Id.

21.     Named Plaintiff Reed's and the other Drivers' workdays usually consisted of completing two separate delivery trips to deliver Defendants' parts to customers.  *See* Exhibit C at ¶¶ 6-8, 26-27.  Specifically, when Named Plaintiff Reed and Drivers arrived at work in the morning, Defendants gave them their morning delivery assignments. *See* Id.  When they returned to the warehouses after completing their morning deliveries, Defendants then assigned them their afternoon deliveries.  *See* Id.

22.     Defendants determined the routes by which Named Plaintiff Reed and Drivers traveled to make their deliveries.  *See* Exhibit I at No. 2; Exhibit C at ¶ 10.

23.     Before Named Plaintiff Reed and Drivers left the warehouse to complete either their morning or afternoon deliveries, they had to load the parts to be delivered onto their work vehicles.  *See* Exhibit C at ¶¶ 6-8, 26-27; Exhibit D.

24.     Before Named Plaintiff Reed and Drivers left for their afternoon deliveries, they had to complete paperwork related to the morning deliveries, submit the money they collected from the morning deliveries, and unload any returns or undelivered parts from the morning deliveries.  *See* Id.

25.     Upon arriving at each customer's location, Named Plaintiff Reed and Drivers were responsible for unloading the parts to be delivered, speaking to the customer, processing and loading any returns, and collecting payment.  *See* Id.

26.     Named Plaintiff Reed and the other Drivers were required to make their deliveries during customers' regular business hours.  *See* Exhibit C at ¶¶ 12, 26-27.  Accordingly, Defendants required Named Plaintiff Reed and Drivers to complete their morning deliveries quickly so that they could return to the warehouse and leave again for their afternoon deliveries in time to get to all their assigned customers.  *See* Id.

27.     Per Defendants' uniformly applied written policy, Defendants did not permit Named Plaintiff Reed and Drivers to use company vehicles **"at any time"** for **"personal use of any kind."**  *See* Exhibit D.  Defendants' policy regarding improper use of company vehicles further states that: "This policy shall be strictly enforced with disciplinary action, up to and including termination."  *See* Id.  **Under Defendants' uniformly applied policy regarding Drivers' use of their work vehicles, Drivers were not permitted to stop their vehicle unless it was at a customer's location or directly along their route, which was determined by their warehouse's dispatcher.** *See* Id.

28.     Defendants prohibited Named Plaintiff Reed and Drivers from exceeding the speed limit while out making their deliveries.  Exhibit D; Exhibit C at ¶ 25; Named Plaintif's Discipline Records, *attached* hereto as Exhibit L at D000112.

29.     On October 3, 2012, Defendants issued a verbal warning to Named Plaintiff Reed for "several speed violations," which were reported by the GPS tracking unit in Named Plaintiff Reed's work vehicle.  *See* Exhibit L at D000112.

30.     On August 24, 2012, Defendants verbally warned Named Plaintiff Reed for "making stops not related to your delivery log."  *See* Exhibit L at D000128.  On November 30, 2012, Defendants issued Named Plaintiff Reed a written warning for making "four additional stops on November 23rd, 2012 that were not part of [Named Plaintiff Reed's] schedule."  *See* Id. That same day, Defendants warned Named Plaintiff Reed that "any future incident will result in One-day Suspension and/or Termination." [sic].  *See* Id.  In response to Defendants' disciplinary action for making unauthorized stops on November 23, 2012, Named Plaintiff Reed wrote to Defendants' General Manager, Steve Moskal (hereinafter "General Manager Moskal"), stating: **"It's a little hard to work all day wit out getn something small to eat but I will not stop anymore I promise."** [sic] *See* Email Regarding Text Message From Named Plaintiff, *attached hereto* as Exhibit M.

31.     General Manager Moskal is and was responsible for calculating and paying the wages of Named Plaintiff Reed and the other Drivers.  *See* Exhibit I at No. 4.

32.     To determine whether Named Plaintiff Reed had violated Defendants' policy regarding unauthorized stops on November 23, 2012, Defendants compared the GPS records showing where and when Named Plaintiff Reed drove and stopped with the route and estimated driving times generated using Google's mapping website: https://www.maps.google.com. *See* Exhibit L at D000113-D000119.

33.     Named Plaintiff Reed had 6 morning deliveries to complete on November 23, 2012. *See* Id.  Defendants' estimates of how long it should have taken Named Plaintiff Reed to complete his 6 morning deliveries that day are as follows (Named Plaintiff Reed left the

Cinnaminson Warehouse at **8:50AM**):

| Delivery Stops | Estimated Arrival Time | Estimated Time Between Stops | Google Maps' Estimated Travel Time | Difference between Estimates |
|---|---|---|---|---|
| First Stop | 9:40AM | 50 minutes (From the Warehouse) | 34 minutes | 16 minutes |
| Second Stop | 10:00AM | 20 minutes | 12 minutes | 8 minutes |
| Third Stop | 10:15AM | 15 minutes | 10 minutes | 5 minutes |
| Fourth Stop | 10:40AM | 25 minutes | 15 minutes | 10 minutes |
| Fifth Stop | 11:15AM | 35 minutes | 24 minutes | 11 minutes |
| Sixth Stop | 12:00PM | 45 minutes | 36 minutes | 9 minutes |
| Return to Warehouse | 1:30PM | 90 minutes | 76 minutes | 14 minutes |

*See* Id.

34.      On this day, November 23, 2012, Named Plaintiff Reed arrived back at the Cinnaminson Warehouse at **2:13PM**.  *See* Id.  Named Plaintiff Reed had 2 afternoon deliveries to complete on that day.  *See* Id.  Named Plaintiff Reed left the Cinnaminson Warehouse at **2:33PM**, just 20 minutes after he got back from his morning deliveries.  *See* Id.  Defendants' estimates of how long it should have taken Named Plaintiff Reed to complete his 2 afternoon deliveries that day are as follows:

| Delivery Stops | Estimated Arrival Time | Estimated Time Between Stops | Google Maps' Estimated Travel Time | Difference between Estimates |
|---|---|---|---|---|
| First Stop | 2:40PM | 7 minutes (From the Warehouse) | 4 minutes | 3 minutes |
| Second Stop | 3:20PM | 43 minutes | 31 minutes | 12 minutes |
| Return to Warehouse | 4:00PM | 40 minutes | 26 minutes | 14 minutes |

*See* Id.

9

35.     Though Defendants' estimates of the time that Named Plaintiff Reed should have taken to arrive at each stop exceeded the estimates generated by Google Maps, the estimates generated by Google Maps were of only the travel time between each stop.  In contrast, Defendants estimated the amount of time that Named Plaintiff Reed should have taken to travel between each stop **and** perform all of the duties that he was required to perform upon arriving at each customer (i.e. unloading parts, processing returns, collecting payment, speaking to customers).  *See* Id.  Moreover, the difference between Defendants' estimates and Google Maps' estimates averaged just 10.2 minutes and was never more than 16 minutes. *See* Id.

36.     Accordingly, Defendants' determination of how long Named Plaintiff Reed should have taken to complete his deliveries provided for no time for Named Plaintiff to take a meal break, let alone a 30-minute uninterrupted meal break.  *See* Id.

37.     Though Defendants assert that they maintain a policy of permitting Drivers to inform their supervisors of missed meal breaks so that their pay can be adjusted, said policy is not contained in the Employee Handbook or any other written policy produced in this litigation. *See* Exhibit I at No. 2.

38.     Though Defendants assert that they maintain a policy of requiring Drivers to take the 30-minute, unpaid meal break, said requirement is not stated in the Employee Handbook or any other written policy produced in this litigation.  Exhibit E.  As stated above, the meal break policy in Defendants' Employee Handbook states only that Drivers are "provided with" the 30-minute unpaid meal break. *See* Id.

39.     Defendants obtained the sworn declarations from 5 delivery drivers who are currently employed at the Cinnaminson Warehouse. *See* Sworn Declarations of Current Delivery Drivers, *attached hereto* as Exhibit N.   Defendants also obtained a sworn declaration of Jeffrey

10

Bealer (Supervisor Bealer), who currently works as both a supervisor and delivery driver for Defendants. *See* Sworn Declaration of Jeffrey Bealer, *attached hereto* as Exhibit O.

40.     Four out of the 5 delivery drivers who provided declarations swore that when they missed a meal break, they did **not** report it to their supervisors. *See* Exhibit N at D000293, ¶ 6. D000291, ¶ 7, D000295, ¶ 6, D000285-D000286, ¶ 8.  The fifth, David Pierce, is silent on what he does when he does not take a meal break. *See* Id. at D000287-D000288.  All 5 drivers swear that when they do not take a meal break it is because they were trying to finish their routes **"faster."** *See* Exhibit N at D000293, ¶ 6. D000291, ¶ 7, D000295, ¶ 6, D000285-D000286, ¶ 8, D000287, ¶ 6.

41.     Even Supervisor Bealer swears that he sometimes misses meal breaks because he is trying to finish his route faster.  Exhibit O at ¶ 8.

42.     Defendants have identified 162 total Drivers who, Defendants admit, were subject to the same automatic meal break deduction policy as Named Plaintiff Reed.  Exhibit I at No. 6.

43.     Defendants have identified 105 total Drivers who, Defendants' admit, were employed by Defendants in New Jersey and subject to the same automatic meal break deduction policy as Named Plaintiff Reed. *See* Id.

## II. <u>LEGAL ARGUMENT</u>

### A. <u>Conditional certification under the FLSA</u>

In order to collectively bring claims for overtime violations pursuant to the Fair Labor Standards Act, the representative plaintiff must seek certification of an opt-in collective action pursuant to 29 U.S.C. §216(b).  Collective action treatment affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Morisky v. Pub. Sev. Elec. and Gas Co.*, 111 F. Supp. 2d 493, 496 (D.N.J. 2000) (*quoting Hoffmann-La Roche, Inc. v.*

*Sperling*, 493 U.S. 165, 170 (1989)). "Collective action treatment under § 216(b) also reflects a policy in favor of judicial economy by which the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffman-La Roche, Inc.* 493 U.S. at 170; *see also Aquilino v. Home Depot, U.S.A., Inc.*, 2011 U.S. Dist. LEXIS 15759 (D.N.J. Feb. 15, 2011); *Bramble v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 39457, 12-13 (E.D. Pa. Apr. 11, 2011).

Courts in this Circuit have adopted a two-step procedure for analyzing a proposed collective action. In the first stage, known as "conditional certification," the Court makes a "preliminary inquiry into whether the plaintiff and the proposed group are similarly situated. This inquiry occurs early in the litigation when minimal evidence is available to the court." *Parker v. NutriSystem, Inc.*, 2008 U.S. Dist. LEXIS 74896, at *1 (E.D. Pa. Sept. 26, 2008).  In the second stage, after discovery is complete, the Court conducts a "factual analysis of each employee's claim to ensure that each proposed plaintiff is an appropriate member of the collective action." *Lugo v. Farmer's Pride Inc.*, 2008 U.S. Dist. LEXIS 17565, at *3 (E.D. Pa. Mar. 7, 2008).   In the second stage, after discovery is complete, the Court then makes a determination as to whether "each plaintiff who has opted into the collective action is in fact similarly situated to the named plaintiff." *Symczyk v. Genesis Healthcare Corp.,* 656 F.3d 189, 193 (3d Cir. Pa. 2011) *reversed on other grounds*.  It is during this second stage that a plaintiff bears the heavier burden of proving same. *Id.*  The present motion implicates only the first step.

With regard to the appropriate standard for certification of a collective action at the first stage, the Third Circuit requires that plaintiffs "make a modest factual showing' to establish that [members of the proposed collective action] are similarly situated." *Id.*; *see also Harriel v. Wal-Mart Stores, Inc.,* Civ. A. No. 11-2510, 2012 U.S. Dist. LEXIS 97527 (D.N.J. July 13, 2012).  Under such a standard, a plaintiff "must produce some evidence, beyond pure speculation, 'of a factual

nexus between the manner in which the employer's alleged policy affected [the plaintiff] and the manner in which it affected other employees." *Symczyk*, 656 F. 3d at 193. The "modest factual showing" standard is a lenient one. *See e.g., Harriel*, 2012 U.S. Dist. LEXIS 97527 ("the Court uses a fairly lenient standard, requiring a 'modest factual showing,' to determine whether potential collective action members are similarly situated"); *Steinberg v. TD Bank, N.A.*, Civ. A. No. 10-5600, 2012 U.S. Dist. LEXIS 89086 at *14 (D.N.J. 2012) ("The modest factual showing analysis is performed using a lenient standard"); *Ritzer v. UBS Fin. Servs.*, Inc., Civ. A. No. 08-1235, 2008 U.S. Dist. LEXIS 71635 (D.N.J. 2008).

While a plaintiff cannot rely solely on the allegations of the complaint, the requirement for proving a factual nexus can be achieved through pleadings, affidavits, or any other supporting documents. *Steinberg*, 2012 U.S. Dist. LEXIS 89086, at *15, *quoting Symczyk.* ("a plaintiff cannot rely solely on the allegations in the complaint, and must instead provide factual support in the form of pleadings, affidavits, deposition testimony, or other supporting documents"); *see also Holley v. Living*, Civ. A. No. 12-70335, 2012 U.S. Dist. LEXIS 70335 (E.D. Pa. May 18, 2012) (finding that the allegations in plaintiff's affidavits and plaintiff's time cards were enough at the conditional certification stage to establish that defendant employed a common policy of automatically deducting 30 minutes of paid time from employee's paychecks regardless of whether or not such employee took a bona fide, uninterrupted, 30 minute meal break).

It is important to note that the *only* issue the Court is to concern itself with at this stage of the certification process is whether the potential opt-in plaintiffs for whom the representative plaintiff seeks Court-supervised notice are similarly situated. *Bramble*, 2011 U.S. Dist. LEXIS 39457 at *13. The Court does not consider the merits of a plaintiff's claims at this stage. *See e.g. Scott v. Bimbo Bakeries, USA, Inc.*, No. 10-3154, 2012 U.S. Dist. LEXIS 26106, at *23 (E.D. Pa. Feb. 29, 2012); *see also Bramble*, 2011 U.S. Dist. LEXIS 39457, at *13 ("[A]t this preliminary stage,

the focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated") *citing Guillen v. Marshalls of MA, Inc.,* 750 F. Supp. 2d 469, 2010 U.S. Dist. LEXIS 121419 (S.D.N.Y. Nov. 16, 2010); *Harris v. Healthcare Servs. Group, Inc.*, 2007 U.S. Dist. LEXIS 55221 (E.D. Pa. July 31, 2007) ("the merits of plaintiffs' claims need not be evaluated in order for notice to be approved and disseminated").  Moreover, the Court does not make credibility determinations at this stage.  *See Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 67 (E.D. Pa. 2009); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 2009 U.S. Dist. LEXIS 40571 (W.D. Pa. May 14, 2009).  Accordingly, a defendant's dispute of facts sworn to in affidavits relied on by a plaintiff for conditional certification is not appropriate for consideration at this preliminary stage.  *Tyger, et al. v. Precision Drilling Corp., et al.*, M.D. PA., no. 11-1913, at p. 7 (Memorandum dated January 7, 2013) *attached hereto as* Exhibit P; *Beauchamp v. Penn Mut. Life Ins. Co.*, 2011 U.S. Dist. LEXIS 83374, at *14 (E.D. Pa. July 29, 2011) ("While such [contradictory affidavits] undoubtedly will be highly relevant to the analysis of whether potential collective action members are similarly situated, it is more properly considered at the post discovery decertification stage.").

Additionally, after conditional certification is granted, a defendant may move the court to decertify the collective action after the case proceeds through discovery. *Herring v. Hewitt Assocs.*, 2007 U.S. Dist. LEXIS 53278, at *12-13 (D.N.J. July 24, 2007); *Aquilino v. Home Depot, Inc.*, 2006 U.S. Dist. LEXIS 66084 at *5-6 (D.N.J. Sept. 6, 2006). Therefore, a preliminary determination "does not prejudice [a defendant] precisely because it is preliminary. It may be revised if it later appears, after appropriate discovery, that the additional plaintiffs who opt in the lawsuit are not similarly situated." *Id*.  Accordingly, certification is appropriate at this stage regardless of whether subsequent discovery may prove that the original plaintiff and opt-in plaintiffs are not similarly situated.  As long

14

as a plaintiff has made a preliminary showing that he or she is similarly situated to the employees to whom he or she seeks to have notice sent, class certification and authorized notice is appropriate. *Id.*

### B.   Meal breaks under the FLSA

Section 207 of the FLSA requires that employers pay employees wages of at least one and one-half times their regular rate for hours worked in excess of 40 hours in a workweek.  29 U.S.C. § 207.  "Bona fide" meal breaks are not compensable work time.  According to the U.S. Department of Labor, a bona fide meal break ordinarily lasts 30 minutes of more.  Importantly, an employee must be completely relieved from duty for the purposes of eating regular meals.  29 C.F.R. § 785.19(a).  In the instant matter, Named Plaintiff Reed and the Drivers regularly worked through their shifts without taking an uninterrupted 30-minute meal break wherein they were completely relieved from duty.  Nevertheless, Defendants regularly deducted 30 minutes of paid time each shift from Named Plaintiff Reed and the Drivers.  Accordingly, as Named Plaintiff Reed and Drivers regularly worked at least 40 hours per workweek, Defendants' unlawful deductions resulted in a failure to properly pay Named Plaintiff Reed and the Drivers one and one-half times their regular rate for all hours worked in excess of 40 in a workweek.

### C.   Conditional certification should be granted because Named Plaintiff Reed has met his lenient burden to demonstrate that he is similarly situated to all other Operators.

Here, Named Plaintiff Reed seeks this Court to certify the instant action as a collective action and facilitate notice to all non-exempt hourly employees of Defendants who worked within the last three years as full-time delivery drivers.  Named Plaintiff Reed contends that Defendants unlawfully utilized a meal break deduction policy and that said policy affected all Delivery Drivers.  Defendants have admitted that all Delivery Drivers are subject to the same meal break policy as well as policies regarding Drivers' use of work vehicles and the tracking of

15

Drivers movement and time through GPS.  *See* Statement of Facts ¶¶ 14, 19-20.  The Defendants' unlawful policy of deducting 30 minutes of paid time from the Drivers resulted in non-exempt, hourly employees being denied compensation for actual hours worked, and accordingly, being denied proper overtime compensation.

The policy at issue is Defendants' deduction of 30 minutes from each shift that Drivers worked for meal breaks which were not taken.  Named Plaintiff Reed relies on Defendants' own written policies, Defendants' sworn Responses to Named Plaintiff Reed's Interrogatories, Time Records, Pay Records, Discipline Records, and the sworn declarations that Defendants obtained from then-current delivery drivers in support of his claim that Defendants maintained a uniformly applied policy wherein Defendants did not pay Drivers at least one and one-half their regular rates for all compensable hours worked in excess of 40 hours in a workweek.

Defendants' written policies provide substantial evidence that: (1) All Drivers performed the same duties; (2) All Drivers regularly worked shifts of at least 8.5 hours, 5 days per workweek (comprised of 40 work hours plus an additional 2.5 hours for "meal breaks"); (2) Defendants tracked the location, driving time, idling time, and stopping time of all Drivers through GPS tracking units contained inside the Drivers' work vehicles; (3) Defendants prohibited all Drivers from using their work vehicles for personal use of any kind at any time and that Drivers were subject to discipline for violation of said restriction; (4) Defendants prohibited all Drivers from exceeding the speed limit while driving their work vehicles and that Drivers were subject to discipline if they violated said restriction. *See* Statement of Facts ¶¶ 5-6, 8, 11, 14, 19, 27-28.  Defendants' sworn Responses to Named Plaintiff Reed's Interrogatories definitively establish that Defendants automatically deducted 30 minutes of paid time for each shift from all Drivers. *See* Statement of Facts ¶ 14.

The Time Records, Pay Records, Disciplinary Records, and Defendants' Emails give credence to Named Plaintiff Reed's sworn affidavit as they demonstrate that Defendants uniformly applied all of the above policies to Named Plaintiff and Drivers and that Defendants' policies resulted in Defendants failing to properly pay Named Plaintiff Reed and the Drivers overtime wages.   *See* Exhibit B; Exhibit F; Exhibit G; Exhibit L.   Moreover, the sworn declarations that Defendants themselves obtained from currently employed members of the putative class reveal that Defendants' meal break policy is a sham and has resulted in Defendants' knowingly failing to pay overtime wages in violation of the FLSA.  Five out of the 6 delivery driver declarants, including Supervisor Bealer who also performs the duties of a delivery driver, swore that when they missed a meal break it was because they were trying to quickly complete their routes[1].  *See* Statement of Facts ¶¶ 39-41. Furthermore, all six declarants swore that when they missed their meal breaks, they did **not** notify management. *See* Id.

Undeniably, portions of the declarations obtained by Defendants from these current employees contradict Named Plaintiff Reed's assertions.  Defendants will undoubtedly rely on said declarations to support Defendants' position that Defendants lawfully utilized their automatic meal break deduction policy because Drivers were provided with a procedure for correcting their pay when they did not take meal breaks (i.e. notifying their supervisors). However, at this first stage of the certification process, the Court should **refrain** from making determinations of credibility or weighing the merits.  *Tyger*, no. 11-1913, at p. 7; *Beauchamp*, 2011 U.S. Dist. LEXIS 83374 at *14.  Instead, the Court should evaluate only Named Plaintiff Reed's sworn affidavit and the declarations of other drivers to determine whether they provide the "modest factual showing" that Named Plaintiff Reed is similarly situated to the other Drivers.

---

[1] The sixth declarant, David Pierce, did not state what he did on the occasions when he missed his meal break.  *See* Statement of Facts ¶ 40.

As Defendants' written policies, the affidavits, Defendants' interrogatory responses, the Time Records, the Pay Records, the Discipline Records, and Email Communications demonstrate, Defendants' policy was uniformly applied to all Drivers in the same way that it was applied to Named Plaintiff Reed.   Defendants' policy resulted in Drivers being denied compensation for all hours worked, and accordingly resulted in Drivers being denied proper overtime compensation.

Such evidence amply provides the "modest factual showing" required for this Court to infer that Named Plaintiff Reed is similarly situated to Drivers employed by Defendants.   *See Titchenell v. Apria Healthcare Inc*., 2011 U.S. Dist. LEXIS 129475 (E.D. Pa. Nov. 8, 2011) (modest factual showing burden met by providing two affidavits of individuals who were subjected to same unlawful policy at two branches of defendant when defendant employed 2,087 potential plaintiffs in over 500 branches throughout United States).   Accordingly, Named Plaintiff Reed respectfully requests that this Honorable Court grant the instant motion for conditional collective action certification.

### D.   The instant matter should be certified as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3).

Plaintiff Reed further moves this Court to certify the instant matter as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3).   Unlike a conditionally certified matter under the FLSA, a class action does not require individuals to "opt in" to become a member of the class; rather, individuals must affirmatively opt-out.   Regardless of the procedural differences however, the Third Circuit Court of Appeals has held that such hybrid collective/class action matters are permissible.   *Knepper v. Rite Aid Corp*., 675 F.3d 249, 260 (3d Cir. Pa. 2012).

Rule 23 of the Federal Rules of Civil Procedure governs a district court's consideration of a motion for class certification. A district court considering a motion for class certification must

18

undertake "a rigorous analysis" to ensure that the requirements of Rule 23(a) are met. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147 (U.S. 1982).  Said requirements of Rule(23) (discussed in detail *infra.*) are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. If all the requirements are met, the court must then determine if the class is permissible under any subset of Rule 23(b).  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. Pa. 2008). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), and the district court may resolve disputes going to the factual setting of the case if necessary to the class certification analysis. *Hayes v. Wal-Mart Stores, Inc.,* 725 F.3d 349, 353-354 (3d Cir. N.J. 2013).  Nevertheless, in determining whether to certify a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d at 318.

Here, Named Plaintiff Reed seeks to certify a class pursuant to Rule 23(b)(3). "For certification under Rule 23(b)(3), a class or sub-class must meet two additional requirements: (1) the questions of law or fact common to class members must predominate over any questions affecting only individual members, and (2) a class action must be superior to other available methods for fairly and efficiently adjudicating the controversy."  *Reardon v. ClosetMaid Corp.,* 2013 U.S. Dist. LEXIS 169821 (W.D. Pa. Dec. 2, 2013).

### E.  The Proposed Class Meets the Numerosity Requirement of Rule 23(a)(1).

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable."  This requirement does not demand that joinder be impossible.  *Szczubelek v. Cendant Mortgage Corp.*, 215 F.R.D. 107, 116 (D.N.J. 2003). Impracticability itself depends on

an examination of the specific facts of each case and imposes no absolute numerical limitations. *See General Tel. Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318, 329 (1980).  While no minimum number of class members is required to maintain a suit as a class action but Courts in the Third Circuit generally hold that a putative class of over 40 is sufficient and under 21 insufficient. *Stoneback v. ArtsQuest*, 2013 U.S. Dist. LEXIS 86457 at *27 (E.D. Pa. June 19, 2013) (*quoting Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).

In the present matter, Defendants have identified 105 putative class members (hereinafter "New Jersey Drivers"). *See* Statement of Facts ¶ 43.  Accordingly, Named Plaintiff Reed has met the numerosity requirement.

### F.  The Proposed Class Meets the Commonality Requirement of Rule 23(a)(2).

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "Rule 23(a)(2)'s commonality requirement does not require identical claims or facts among class members. For purposes of Rule 23(a)(2), even a single common question will do." *Marcus v. BMW of N. Am.*, LLC, 687 F.3d 583, 597 (3d Cir. N.J. 2012) (internal citations omitted).

Here, Named Plaintiff Reed contends that Defendants' uniformly applied pay policies resulted in Defendants failing to pay New Jersey Drivers at least one and one-half times their regular rate for all hours worked in excess of 40 hours in a workweek in violation of the New Jersey Wage Laws.  Hence, Named Plaintiff Reed has presented common questions (*i.e.* whether New Jersey Drivers were denied compensation as a result of Defendants' unlawful policies of automatically deducting 30 minutes of paid time for each shift for meal breaks which were not taken, and whether Defendants in fact had such a policy) sufficient to meet his commonality requirement.  Moreover, as Rule 23(a)(2) is subsumed by Rule 23(b)(3)'s predominance inquiry, Named Plaintiff Reed will further discuss such issues below. *See Danvers Motor Co., Inc. v.*

20

*Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) ("[T]he commonality requirement is subsumed by the predominance requirement.").

### G.  The Proposed Class Meets the Typicality Requirement of Rule 23(a)(3).

Rule 23(a)(3) requires that "the claims and defenses of the representative parties" be "typical of the claims or defenses of the class."  The "typicality" requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."  *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 311 (3d Cir. 1998).  The cause of the injury claimed on behalf of the class must be a result of some alleged "common wrong."  *Id.* at 312.

Here, the claims at issue are based on the failure of Defendants to pay New Jersey Drivers for all compensable time including compensable time worked in excess of 40 hours in a workweek.   Defendants' uniform policy in failing to pay for 30 minutes of compensable time per shift injured Named Plaintiff Reed in a typical fashion and in the same manner Defendants' failures injured other class members.   Hence, Named Plaintiff Reed has met the burden establishing his claims are typical.  *See, e.g., Williams v. Aramark Sports, LLC*, 2011 U.S. Dist. LEXIS 102173 at *10 (E.D. Pa. 2011) (finding typicality where named plaintiff "was paid under the same payroll policies as the rest of the Class Members, and those payroll policies form the basis of the Complaints in these cases").

### H.  The Proposed Class Meets the Adequacy Requirement of Rule 23(a)(4).

Rule 23(a)(4) requires "the representative parties" to "fairly and adequately protect the interests of the class."  "The adequate representation requirement in Rule 23 is designed to assure that courts evaluate [both] the named plaintiffs' and counsel's ability to fairly and adequately represent class interests.  Under Fed. R. Civ. P. 23(a)(4), the district court ensures that no conflict

of interest exists between the named plaintiffs' claims and those asserted on behalf of the class, and inquires whether the named plaintiffs have the ability and incentive to vigorously represent the interests of the class."   *Gotthelf v. Toyota Motor Sales, U.S.A., Inc*, 525 Fed. Appx. 94, 100-101 (3d Cir. N.J. 2013) (internal citations omitted).  The adequacy-of-representation requirement "tends to merge" with the commonality and typicality criteria of Rule 23(a), which "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Southwest*, 457 U.S. at 157, n.13 (*quoted in Amchem Products v. Windsor*, 512 U.S. 591, 625-626 (1997)). "The adequacy heading also factors in competency and conflicts of class counsel." *Amchem*, 512 U.S. at 625-626.

These requirements are met here:  (1) The harm allegedly suffered by Named Plaintiff Reed – unpaid wages resulting from Defendants' uniform failure to pay for 30 minutes of compensable time per shift due to unlawfully enforced meal break deductions – is aligned with the harm allegedly suffered by the putative class members; and (2) Named Plaintiff Reed's counsel is highly qualified employment law counsel experienced in FLSA and wage and hour litigation.  (Miller Declaration at ¶¶ 17-23).

## I.   The Proposed Class Meets the Predominance Inquiry of Rule 23(b)(3).

Once the requirements of Rule 23(a) are satisfied, a class may be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members" (the "predominance" requirement), and "that a class action is *superior* to other available methods for fairly and

efficiently adjudicating the controversy" (the "superiority" requirement).   Fed. R. Civ. P. 23(b)(3) (emphasis added).

"[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (en banc). *Accord, e.g., In re Imprelis Herbicide Mktg.*, 2013 U.S. Dist. LEXIS 149323 (E.D. Pa. Oct. 17, 2013).   Here, the claim that Defendants failed to pay Named Plaintiff Reed and putative class members wages for all hours worked is a common issue that predominates over any hypothetical individual issues.   *See e.g., Ripley*, 287 F.R.D. at 309; *Dugan v. Towers, Perrin, Forster & Crosby, Inc.*, No. 09-5099, 2013 U.S. Dist. LEXIS 136305, at *11 (E.D. Pa. Sept. 24, 2013).

Moreover, damages can be ascertained easily as Defendants have accurate time records for the putative class by virtue of the GPS tracking units contained inside each work vehicle driven by New Jersey Drivers.   *See* Statement of Facts ¶¶ 19-20.   In this regard, this case is similar to *Levya v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013).   In *Levya*, the court found that class issues predominated, even though damages would be individualized, because the defendants' "computerized payroll and time-keeping database would enable the court to accurately calculate damages and related penalties to each claim." *Id.* at 511. Likewise, here Defendants' computerized GPS time-keeping system provides exact records for the time each class member spent driving, idling, stopped while making their deliveries.   Hence, the amount of owed wages can be easily calculated using common formulas and algorithms.   Hence, Named Plaintiff Reed has met his predominance burden.

**J.   The Proposed Class Meets the Superiority Requirements of Rule 23(b)(3).**

With respect to superiority, courts review the following factors to determine if a class action is superior to other forms of adjudication:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. Pa. 2011).

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Prudential*, 148 F.3d at 316 (internal quotation marks omitted).  Here, class wide resolution of this matter is superior to individual claims because: (a) the amount of the claims of most class members is relatively small (consisting of approximately 2.5 hours of unpaid time per workweek) resulting in class members having less of a desire to control the prosecution of this matter individually; (b) there is no other litigation already begun by class members concerning the same controversy; (c) it is desirable to have all the claims in a single forum to eliminate the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for Defendants; and (d) there are likely no difficulties in managing this class as explicit records exist both demonstrating who is a class member and the amount of unpaid wages at issue.

Hence, a class action is superior to other forms of adjudication.

### K.  **This Court should facilitate notice to all class members.**

District Courts have the discretion when implementing a collective action to facilitate notice to all potential class members. *Hoffman-La Roche, Inc.*, 493 U.S. at 169. "Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Id.* at 171. "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of this action. *Id.* at 172.  Further, by "monitoring preparation and distribution of the notice, a court can ensure that the notice is timely, accurate, and informative.  Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed." *Id.*  Accordingly, upon a finding that a plaintiff is entitled to preliminary certification, Courts are to facilitate the distribution of notice of the lawsuit to all potential class members. *See e.g. Gaiteri v. Wyo. Valley Health Care Sys.*, 2013 U.S. Dist. LEXIS 177932 (M.D. Pa. Dec. 19, 2013); *Altenbach v. Lube Ctr., Inc.*, 2009 U.S. Dist. LEXIS 106131 (M.D. Pa. Nov. 13, 2009).

Furthermore, notice must be provided to class members informing them of their right to opt-out of the litigation in a Rule 23(b)(3) certified class action.  Fed. R. Civ. Pro. 23(c)(2)(b).

### L.  **Notice should be sent to all individuals who have worked for Defendants as Delivery Drivers**

Named Plaintiff Reed requests this Court to conditionally certify a class of all hourly employees of Defendants who have worked for Defendants in the three years preceding the filing of Named Plaintiff Reed's Complaint as delivery drivers.  To effectuate notice to such class members, Named Plaintiff Reed will require Defendants to provide the names, addresses and phone numbers of all individuals who have worked for them in this capacity for the last three years.  *See e.g. Chabrier v. Wilmington Fin., Inc.*, 2006 U.S. Dist. LEXIS 90756 (E.D. Pa. Dec. 13, 2006) (approving the

facilitation of notice to potential opt-in plaintiffs who worked for the defendants within the past three years); *Steinberg,* 2012 U.S. Dist. LEXIS 89086 (holding that the Court may assume a 'willful violation' of the FLSA for purposes of a class certification motion and facilitate notice to potential plaintiffs who worked for the defendant for the past three years).

Named Plaintiff Reed respectfully requests that this Court order Defendants to provide such information, in importable and electronic form (i.e. Microsoft excel, csv, or a similar format), for each person who has been employed as a delivery driver for Defendants in the three years preceding the filing of Named Plaintiff's Complaint to the present. To ensure this information can be easily imported, the spreadsheet should contain separate columns for first name, last name, street address, city, state, zip code, country, and phone number.  Named Plaintiff Reed then requests that this Court order Named Plaintiff Reed to mail notice to the individuals.  However, Named Plaintiff Reed seeks this Court order the Parties to confer regarding the exact procedure and language of the notice following the Court's ruling on this motion, as Named Plaintiff Reed is optimistic that following a ruling on the instant motion, the Parties may be able to agree to the specific notice procedures and language.

## **CONCLUSION**

For the foregoing reasons, Named Plaintiff Reed respectfully requests that this Honorable Court grant the instant motion.


Respectfully Submitted,


*/s/ Matthew Miller*
Matthew D. Miller, Esq.
Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
**SWARTZ SWIDLER, LLC**
1878 Marlton Pike East, Ste. 10

Cherry Hill, NJ 08003
Phone: (856) 685-7420
Fax: (856) 685-7417

July 30, 2014