UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JASON REED,

                  Plaintiff,

v.

EMPIRE AUTO PARTS, INC.,

                Defendant.

Case No. 1:13-CV-05220-RMB-AMD

---

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR
CERTIFICATION OF A COLLECTIVE ACTION AND FOR CERTIFICATION OF A
CLASS PURSUANT TO RULE 23: RETURN DATE OCTOBER 20, 2014**

---

GREENBAUM, ROWE, SMITH & DAVIS LLP
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, New Jersey 07095
(732) 549-5600
Attorneys for Defendant,
Empire Auto Parts, Inc.

Of Counsel:

      Richard L. Hertzberg, Esq.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

POINT I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

PLAINTIFF DOES NOT SATISFY THE STANDARD FOR
CERTIFICATION OF A COLLECTIVE ACTION UNDER THE
FAIR LABOR STANDARDS ACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A.   The Standard for Certifying A Collective Action Under
     The Fair Labor Standards Act. . . . . . . . . . . . . . . . . . . . . . . 7

B.   A Collective Class Cannot be Certified Based on
     Speculation and Conclusory Allegations. . . . . . . . . . . . . 10

     1.   Under these facts, certification of a collective
          class would constitute a "fishing expedition" for the
          purpose of "stirring up" litigation. . . . . . . . . . . . . . 10

     2.   Plaintiff's conceded lack of personal knowledge
          precludes certification of a collective class. . . . 12

C.   That Empire May Have Had Access to Information Through
     Which it Could Conceivably Determine Whether its
     Employees Were Ignoring Company Policy is Not Relevant
     to a Class Certification Analysis. . . . . . . . . . . . . . . . . . 18

D.   An Automatic Deduction Policy is Lawful, and Reed
     Cannot Serve as a Class Representative Because he
     Failed to Utilize the Procedure in Place for Obtaining
     Compensation for Working Through Lunch. . . . . . . . . . . . . 23

E.   The Need for Individualized Inquiries Confirms That
     Any Supposed Plaintiffs Are Not Similarly Situated. . 25

F.   There is no Basis for Extending the Scope of the
     Supposed Collective Class Beyond the Warehouse at
     Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

POINT II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

PLAINTIFF FAILS TO MEET THE RULE 23 STANDARDS FOR
CERTIFYING A CLASS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

-i-

A.   The Court Must Undertake a Rigorous Analysis in Determining Whether Plaintiff Has Satisfied All Four Prerequisites of Class Certification. ...............28

B.   Plaintiff Cannot Identify an Ascertainable Class Based on Objective Criteria. ............................31

C.   Plaintiff has Failed to Establish That He Has Met the Requirements of Rule 23(a). ........................33

   1.   The proposed class lacks numerosity and plaintiff has failed to prove that joinder of potential class members would be impractical. .....................33

   2.   The potential class lacks commonality. ............34

   3.   Plaintiff does not satisfy the typicality requirement insofar as he faces unique defenses. ..............35

   4.   Plaintiff is not an adequate class representative. 36

D.   Certification Under Rule 23(b)(3) Would Be Inappropriate Because Individual Issues Predominate. 37

   1.   Individual issues predominate. ....................37

   2.   Individualized damages questions will predominate. 38

E.   Issues of Notice Should be Deferred. ................39

CONCLUSION ..................................................40

## TABLE OF AUTHORITIES

**Page**

**Cases**

Adami v. Cardo Windows Inc.
  299 F.R.D. 68 (D.N.J. 2014) ...............................30
Agostino v. Quest Diagnostics, Inc.
  256 F.R.D. 437 (D.N.J. 2009) ...............................31
Armstrong v. Weichert Realtors
  2006 U.S. Dist. LEXIS 31351 at *8 (D.N.J. May 19,
  2006) ...............................................14, 15
Banks v. Radioshack Corp.
  2014 U.S. Dist. LEXIS 60794 at *7-*8 (E.D. Pa. April
  25, 2014) ...............................................25
Bernard v. Household International, Inc.
  231 F.Supp. 2d 433 (E.D. Va. 2002) .........................27
Briggins v. Elwood
  882 F. Supp. 2d 1256 .......................................26
Busk v. Integrity Staffing Solutions, Inc.
  713 F.3d 525 (9th Cir. 2013) ...............................26
Camesi v. University of Pittsburgh Medical Center
  729 F.3d 239 (3d Cir. 2013) ................................7
Cason v. Vibra Healthcare
  2011 U.S. Dist. LEXIS 47160 (E.D. Mich. May 3, 2011) ........17
Comcast v. Behrend
  133 Sup. Ct. 1426 (2013) ...............................37, 38
D'Anna v. M/A-Com, Inc.
  903 F.Supp. 889 (D.Md. 1995) ...............................11
Davis v. Charoe Pokphand (USA), Inc.
  303 F.Supp. 2d 1272 (M.D. Ala. 2004) .......................11
Dreyer v. Altchem Environmental Services, Inc.
  2007 U.S. Dist. LEXIS 71048 at *8-*9 (D.N.J.
  September 25, 2007) ........................................11
Evancho v. Santa Fe Aventis U.S., Inc.
  2007 U.S. Dist. LEXIS 93215, at *12-*13 (D.N.J. Dec.
  19, 2007) ...............................................8
Freeman v. Walmart
  256 F.Supp. 2d 941 (W.D. Ark. 2003) ........................11
Frye v. Baptist Memorial Hospital
  2010 U.S. Dist. LEXIS 101996 at *15 (W.D. Tenn. Sept
  27, 2010) aff'd, 495 Fed. Appx. 669 (6th Cir. 2012) .........23
Garcia v. Freedom Mortgage Corp.
  274 F.R.D. 513 (D.N.J. 2011) ...............................30
Guenzel v. Mt. Olive Board of Education
  2011 U.S. Dist. LEXIS 132102 at *8 (D.N.J. Nov. 16,
  2011) ...............................................19

-iii-

Hall v. Guardsmark, LLC
  2012 U.S. Dist. LEXIS 116129 (W.D. Pa. Aug. 17, 2012)
  at *15-*16 ................................................. 9
Hayes v. Walmart Stores, Inc.
  725 F.3d 349 (3d Cir. 2013) ............................... 31
Hertz v. Woodbury County Iowa
  566 F.3d 775 (8th Cir. 2009) ............... 19, 20, 21, 22
Hill v. United States
  751 F.2d 810 (6th Cir. 1984) .............................. 26
In re Hydrogen Peroxide Anti-Trust Litigation
  552 F.3d 305 (3d Cir. 2008) ........................... 30, 37
In re Prudential Insurance Company American Sales
  Practice Litigation Agent Actions
  148 F.3d 283 (3d Cir. 1998) .............................. 36
In re Schering-Plough ERISA Litigation
  589 F.3d 585 (3d Cir. 2009) .............................. 35
Kronick v. bebe Stores, Inc.
  2008 U.S. Dist. LEXIS 78502 at *9 (D.N.J. October 2,
  2008) .................................................. 13, 14
Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.
  149 F.R.D. 65 (D.N.J. 1993) ........................... 33, 34
Marcus v. BMW of North America, LLC
  687 F.3d 583 (3d Cir. 2012) ........................... 31, 33
Morisky v. Public Service Electric and Gas Company
  111 F.Supp. 2d 493 (D.N.J. 2000) ..................... 18, 29
Neal v. Casey
  43 F.3d. 48 (3d Cir. 1995) ............................... 29
Newton v. City of Henderson
  47 F.3d 746 (5th Cir. 1995) ........................... 21, 22
Pomareda v. Homebridge Mortgage Bankers Corp.
  2007 U.S. Dist. Lexis 12572 at *6-*7 (S.D. Fla.
  February 22, 2007) ....................................... 27
Postiglione v. Crossmark, Inc.
  2012 U.S. Dist. LEXIS 163615 at *23 (E.D. Pa. Nov.
  15, 2012) ................................................. 9
Rogers v. Ocean Cable Group, Inc.
  2011 U.S. Dist. LEXIS 149197 at *11-*12 (D.N.J. Dec.
  29, 2011) ......................................... 8, 12, 13, 17
Saleen v. Waste Management, Inc.
  649 F.Supp. 2d 937 (D. Minn. 2009) ................. 15, 16, 17
Smith v. Sovereign Bank Corp., Inc.
  2003 U.S. Dist. Lexis 21010 at *8 (E.D. Pa. November
  13, 2003) ................................................ 10
Sullivan v. DB Investments, Inc.
  667 F.3d 273 (3d Cir. 2011) .............................. 35
Symczyk v. Genesis Healthcare
  133 Sup. Ct. 1523 (2013) ................................. 7

3088062.1

Tresvant v. Fidelity Employer Services Corp.
  434 F.Supp. 2d 40 (D. Mass. 2006) .......................... 27
Verdecchio v. Tri-County Real Estate Maintenance
  Company, Inc.
  2012 U.S. Dist. LEXIS 179337 at *5 (D.N.J. Dec. 19,
  2012) ...................................................... 26
Walmart Stores v. Dukes
  131 S.Ct. 2541 (2011) ................................. 30, 34
West v. Border Foods, Inc.
  2006 U.S. Dist. LEXIS 96963 at *19 (D. Minn. June 12,
  2006) ...................................................... 27
White v. Rick Bus Company
  743 F.Supp. 2d 380 (D.N.J. 2010) ....................... passim
Williams v. Accredited Home Lenders
  2006 U.S. Dist. LEXIS 50653 at *14 (N.D. Ga. July 25,
  2006) ...................................................... 15
Zavala v. Walmart Stores, Inc.
  691 F.3d 527 n.4 (3d Cir. 2012) ............................. 8

**Statutes**
29 U.S.C. §216(b) ............................................. 7
29 U.S.C. §255(a) ............................................ 39

**Rules**
Rule 23(a) ....................................... 28, 29, 34, 35
Rule 23(a)(3) ................................................ 35
Rule 23(b) ................................................... 29
Rule 23(b)(3) ................................... 29, 34, 35, 37

-v-

## PRELIMINARY STATEMENT

This brief is presented by defendant Empire Auto Parts, Inc. ("Empire"), in opposition to plaintiff Jason Reed's ("plaintiff," "Mr. Reed" or "Reed") motion for certification of a collective class and for certification of a class pursuant to Rule 23.  As will be detailed, plaintiff does not satisfy the prerequisites for certifying a collective action, much less the more stringent requirements for certifying a Rule 23 class action.  Notwithstanding plaintiff's best effort to obscure the facts, plaintiff cannot hide from his admitted lack of knowledge of any colleagues who shared his alleged predicament.

In order to certify a collective class action, plaintiff must establish, in the first instance, an unlawful policy affecting all class members uniformly.  Plaintiff cannot seek certification based on the hope that subsequent class notification and discovery will retroactively justify certification of a class.  There is no competent evidence of a wrongful policy presently before the Court.  What is before the Court is one plaintiff **with no knowledge of anything other than his unique situation**.  Courts will not condone a "fishing expedition," nor will they certify a class based on speculation. Here, not only are there no proofs of any unlawful lunch policy, but co-workers do not support plaintiff's view of the facts.  At the very least, individualized examination of each employee's

experience with the automatic lunch deduction makes this case inappropriate for class treatment.

In order to certify a collective action, or a class action, the class representative cannot be unique. Here, plaintiff contends he was "singled out," and that his job responsibilities were more difficult than those of his co-workers.  He concedes that he purposefully disregarded company policy, even though he was aware of a procedure through which the automatic lunch deduction could be adjusted.

Plaintiff stands alone.  He presents no competent evidence supporting certification of a class.  Plaintiff's motion should be denied.

<u>STATEMENT OF FACTS</u>

Empire hired Reed on or about April 27, 2010, in its Cinnaminson location.  Reed was terminated on or about February 22, 2013, after being involved in an accident while speeding.[1] Upon taking employment, Reed completed a form indicating that he had received an employee handbook.[2]

The handbook set forth Empire's various policies regarding employment.  For example, the handbook informed all employees that their normal work schedule "is 8 hours a day, 5 days a

---

[1] While working for Empire, Reed earned a base hourly rate between $12.00 and $13.75. <u>See</u> Declaration of Matthew D. Miller, Esq. ("Miller Decl."), Exhibit C at ¶4.

[2] Reed now claims he did not receive a handbook at that time.

-2-

week." See Miller Decl., Exhibit E.  The handbook notified all employees, in plain English, that "[n]on-exempt employees should **accurately record the time they begin and end their work, as well as the beginning and ending time of each meal period.**" Id. (Emphasis added).    Reed understood that it was his responsibility to accurately record his time. See Declaration of Richard L. Hertzberg, Esq. ("Hertzberg Decl."), Exhibit A, at 30:23-31:8.

With regard to meal periods, the handbook explained that delivery drivers "are provided with a thirty-minute unpaid lunch break for meals during each work period." Id.  Finally, the handbook advised all employees that all hourly employees would receive overtime compensation "at one and one-half times their straight time rate for all hours worked in excess of 40 hours per week." Id.

In light of the foregoing, all delivery drivers, including Reed, were frequently and repeatedly advised that they should take their half-hour unpaid lunch break. See Declaration of Steve Moskal ("Moskal Decl."), ¶3.  The drivers are aware of Empire's policy in that regard. See Declaration of Reed's co-workers at Cinnaminson attached to Miller Decl., Exhibit N, all of which confirm that drivers were advised to take their lunch break and all of which confirm that the drivers have no issue regarding overtime pay.  Empire drivers are not instructed to

-3-

skip a lunch break, nor are they disciplined for taking their break. See e.g., Exhibit N at Declaration of Michael Diamante, ¶7, and Declaration of Kenneth Tongue, ¶6; Declaration of Jeffrey Bealer, Exhibit O at ¶7. Reed **admits** that he was instructed on several occasions to take his lunch break. See Hertzberg Decl., Exhibit A at 38:19-25,39:5.

Reed was aware that in the event a driver does not take a lunch break, Empire has a procedure through which the driver can have his or her paycheck adjusted accordingly. Moskal Decl., ¶4. Empire advises its drivers to inform Chief Operations Officer Steve Moskal when they work through lunch, so that their compensation can be adjusted. Id. at ¶5. When a driver advises that he or she worked through lunch, Mr. Moskal makes the appropriate adjustment to reflect the work performed. Id. at ¶6. Every time Mr. Moskal is advised that a driver has worked through lunch, he adjusts the driver's pay to reflect that the automatic deduction should be reversed. Id. Empire has no knowledge of, or reason to know of, instances when drivers work through lunch unless they notify their supervisor or Mr. Moskal. Id. at ¶7. Empire does not utilize or check GPS records in connection with payroll. See Moskal Decl., ¶8.

Not only do the Cinnaminson drivers acknowledge that they have no issue with receiving proper compensation or overtime pay, **but Reed admits that his paycheck was adjusted for working**

-4-

through lunch when he informed Mr. Moskal.   See e.g. Hertzberg
Decl., Exhibit A at 31:19-23 (called Moskal); 38:19-39:14
(describing procedure for reporting working through lunch);
48:11-22; ("whenever pay time came, but when I received my cheek
(sic), it was adjusted.").[3]  However, there were times when Reed
worked through lunch and he did not inform his supervisors.   See
Id. at 48:11-14.   In fact, there were times where Reed decided
to cut short his thirty-minute lunch but chose not to report it.
Id. at 46:2-6.

Reed never worked anywhere other than Empire's Cinnaminson
branch.   See Pb2.   Throughout that period, there were never more
than seven to ten drivers at the Cinnaminson warehouse.   Moskal
Decl., at ¶9.   In fact, Reed only identifies seven (7) other
drivers with whom he worked.   See Pb4.   Reed possesses no
knowledge regarding any drivers from Empire's other locations.

Dispositively, Reed testified during his deposition that he
does not know of any other driver who did not take their lunch
breaks.   See Hertzberg Decl., Exhibit A at 35:25-36:3 (Q: Do you
know whether everybody else didn't take their half hour lunch?
A: No, I don't know that or not."); 44:9-12 ("Q: Do you know for
a fact that other people didn't take a half-hour lunch in the
warehouse?   A: I don't know that for a fact, no.").   Reed

---

[3] Reed acknowledges that he routinely was paid overtime.   See
Hertzberg Decl., Exhibit A at 25:4-6.

acknowledged that he witnessed other drives taking their lunch between their morning and afternoon routes. See Id. at 66:10-16.

Reed believes his situation was unique. He felt he was being "singled out." Id. at 36:21-23. Reed further felt that his routes were more difficult than those of the other drivers, which impacted his ability to take his lunch break. Id. at 46:2-22 ("more demanding routes"). Reed developed a "personality conflict" with his supervisor, Jeffrey Bealer. Id. at 36:24-37:4. Given his unique set of circumstances, it is not surprising that Reed is a sole representative of a group that plaintiff maintains consists of approximately 105 individuals.

As will be set forth below, these facts do not support certification of a collective class action, or any class action. It is well settled that employers are entitled to utilize an automatic meal deduction and are not charged with double checking their employees' compliance with their reporting policies. Plaintiff's argument rests almost entirely on the faulty premise that Empire had a duty to check the accuracy of Mr. Reed's reporting practices.

Each of the above factors renders plaintiff an unsuitable representative for any class. Each of the above factors militates against a grant of class action certification. Applying the relevant law to the facts demonstrates that this Court should deny plaintiff's motion for class certification.

-6-

<u>LEGAL ARGUMENT</u>

<u>POINT I</u>

**PLAINTIFF DOES NOT SATISFY THE STANDARD FOR CERTIFICATION OF A COLLECTIVE ACTION UNDER THE FAIR LABOR STANDARDS ACT.**

A.   The Standard for Certifying A Collective Action Under The Fair Labor Standards Act.

The Fair Labor Standards Act, 29 U.S.C. §216(b) ("FLSA"), permits employees to bring actions against their employers on their own behalf, or collectively on behalf of "similarly situated employees."   Litigation brought on behalf of other employees is commonly referred to as a "collective action." <u>Symczyk v. Genesis Healthcare</u>, 133 Sup. Ct. 1523, 1527 (2013). At this juncture, to certify a collective action, the named plaintiff must make a "modest factual showing" that he is "similarly situated" to the group of employees he seeks to represent.   <u>Camesi v. University of Pittsburgh Medical Center</u>, 729 F.3d 239, 243 (3d Cir. 2013).

The "similarly situated" inquiry focuses on the existence of an alleged classwide policy or plan that violates the FLSA. Otherwise stated, whether the plaintiff "and the prospective party Plaintiffs suffered from a single decision, plan or policy." <u>Symczyk v. Genesis Healthcare Corp.</u>, 356 F.3d 189, 192 (3d Cir. 2011) <u>reversed on other grounds</u> 133 Sup. Ct. 1523 (2013).   Thus, **"a Plaintiff must produce some evidence beyond pure speculation of a factual nexus between the manner in which**

-7-

the employer's alleged policy affected her and the manner in which it affected other employees." Zavala v. Walmart Stores, Inc., 691 F.3d 527, 537 n.4 (3d Cir. 2012) (citations omitted) (emphasis added).

Thus, while the burden has been described as "modest," it is far from automatic. As will be discussed in Point I(B), infra, courts in this jurisdiction (and elsewhere) have consistently denied motions to certify a collective class where plaintiffs have not met their burden of demonstrating a factual nexus through competent evidence. See, e.g., Rogers v. Ocean Cable Group, Inc., 2011 U.S. Dist. LEXIS 149197 at *11-*12 (D.N.J. Dec. 29, 2011); Evancho v. Santa Fe Aventis U.S., Inc., 2007 U.S. Dist. LEXIS 93215, at *12-*13 (D.N.J. Dec. 19, 2007).

Here, plaintiff fails to satisfy the fundamental requirement of demonstrating a nexus with the rest of the putative class. Plaintiff provides no evidence that Empire has a companywide policy of withholding overtime pay.

The only Empire policies Reed can identify are (1) that employees are charged with accurately recording their time, (Hertzberg Decl., Exhibit A, at 30:23-31:8); (2) that employees are repeatedly advised to take their half hour lunch, (Id. at 38:19-25-39:5); and (3) that there is a procedure for adjusting compensation in the event an employee works through lunch. (Id. at 38:19-39:14)

-8-

It was plaintiff's obligation to accurately report his hours. Id. at 30:23-31:8; Miller Decl., Exhibit E. Significantly, consistent with this policy, Empire depended on its drivers to honestly advise them if they worked through lunch. Moskal Decl., ¶7.

Plaintiff is the sole representative of a purported class about which he has no knowledge. Reed admits that he does not know if anyone else in the company shared his experience. See Hertzberg Decl., Exhibit A at 35:19-36:3 ("Q: Do you know whether everybody else didn't take this half-hour lunch? A: No, I don't know that or not."); 44:9-12 (Q: Do you know for a fact that other people didn't take a half-hour lunch in the warehouse? A: I don't know that for a fact, no."). Some quantum of proof is required demonstrating that Empire maintains a companywide policy of refusing to pay employees working through lunch. Without such proof as to any employee other than plaintiff, and there is none, conditional certification is inappropriate. See Hall v. Guardsmark, LLC, 2012 U.S. Dist. LEXIS 116129 (W.D. Pa. Aug. 17, 2012) at *15-*16 (noting that plaintiff must make a factual showing that putative plaintiffs were subject to a common policy or plan that violated the law); Postiglione v. Crossmark, Inc., 2012 U.S. Dist. LEXIS 163615 at *23 (E.D. Pa. Nov. 15, 2012) (denying conditional certification and concluding that because plaintiff "failed to demonstrate

-9-

that there was a common policy or plan denying overtime compensation required under the FLSA, Plaintiffs have not demonstrated any common transaction or occurrence"). Plaintiff's application for class certification rests on pure speculation. It should be denied as a matter of law.

      **B.**    **A Collective Class Cannot be Certified Based on Speculation and Conclusory Allegations.**

            **1.**    **Under these facts, certification of a collective class would constitute a "fishing expedition" for the purpose of "stirring up" litigation.**

Class certification of a collective action is not a "rubber stamp." See Smith v. Sovereign Bank Corp., Inc., 2003 U.S. Dist. Lexis 21010 at *8 (E.D. Pa. November 13, 2003) ("automatic preliminary class certification is at odds with the Supreme Court's recommendation to ascertain the contours of the [section 216] action at the outset and such certification does not comport with the congressional intent behind FLSA's opt-in requirement, which was designed to limit the potentially enormous size of FLSA representative actions.") (Citations omitted). On the contrary, even at this initial stage, courts in the District of New Jersey "require the plaintiffs to show a modest factual nexus between their situation and that of the proposed class members." White v. Rick Bus Company, 743 F.Supp. 2d 380, 387 (D.N.J. 2010) (citations omitted). "In spite of the modest [factual nexus] evidentiary standard, courts have not

hesitated to deny conditional certification when evidence is lacking." Dreyer v. Altchem Environmental Services, Inc., 2007 U.S. Dist. LEXIS 71048 at *8-*9 (D.N.J. September 25, 2007).

The factual nexus requirement is premised on the principles of "sound case management to avoid the **stirring up of litigation through unwanted solicitation**; [and because] an employer should not be unduly burdened [and prejudiced] **by a frivolous fishing expedition** conducted by plaintiff at the employer's expense." D'Anna v. M/A-Com, Inc., 903 F.Supp. 889, 893-894 (D.Md. 1995) (emphasis added). Indeed, it "would be a waste of the court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." Freeman v. Walmart, 256 F.Supp. 2d 941, 945 (W.D. Ark. 2003). A plaintiff's own belief that other employees may desire to opt in and that additional plaintiffs will subsequently come forward once notice issues is insufficient to support certification of a class. See, Davis v. Charoe Pokphand (USA), Inc., 303 F.Supp. 2d 1272, 1277 (M.D. Ala. 2004).

This hope that others may join him if they receive notice is at the core of Reed's application. Since he has no personal knowledge of anyone else's experience (despite working for Empire for several years), to certify a class herein would be to

-11-

condone speculation and solicitation. Decisional law confirms the Court's will not to permit a class to move forward on such a speculative foundation.

    **2. Plaintiff's conceded lack of personal knowledge precludes certification of a collective class.**

Plaintiff's lack of knowledge about any other employee's situation should be dispositive on this motion. Courts in this jurisdiction, and elsewhere, reject applications for collective certification where the named plaintiff has little or no knowledge of whether any other employee is subject to the same unlawful policy he claims applied to him.

For example, in Rogers v. Ocean Cable Group, Inc., this Court denied plaintiff's motion for certification based on circumstances not dissimilar from those present in this case. 2011 U.S. Dist. LEXIS 149197 (D.N.J. December 29, 2011). The Rogers plaintiffs were employed as technicians who performed installation and maintenance of television cable and telephone equipment. Id. at *1. Among other allegations, plaintiffs contended that they were not paid overtime and that they were required to work through lunch. Id. at *3. Applying the applicable Third Circuit standard, the Court determined class certification was improper because the technicians did not have personal knowledge about other technicians. Id., at *11-*12. The plaintiffs' affidavits merely stated that the other putative

3088062.1

class members did not receive overtime "as far they [knew]." Id. at *12.   In other words, the plaintiffs were asking the Court "to assume that because they worked in excess of 40 hours in a work week, that the other technicians must have as well." Id. at *11.   The Court held that plaintiffs' evidence was insufficient to determine that the plaintiffs' situations were representative of the experience of all other technicians.   Id. at *11-12.

New Jersey courts are mindful of the potential for abuse of the collective action.   In Kronick v. bebe Stores, Inc., 2008 U.S. Dist. LEXIS 78502 at *9 (D.N.J. October 2, 2008) the plaintiffs failed to meet their burden of demonstrating that the "plaintiffs were similarly situated to their prospective class such that notice to the class should [have] proceed[ed]."   The court noted that the plaintiffs stated in their affidavits that they were trained "to shave employee's time and that [they] were not properly compensated for overtime worked."   Id. at *7.   In their affidavits, plaintiffs further asserted that they "learn[ed] that the operations of the bebe retail store, and the manner in which wages and compensation of store managers, acting store managers, store co-managers and sales leaders were handled, [were] substantially similar at [defendant's] retail locations."   Id. at *8.

-13-

The court in Kronick found that these "general and vague" statements were insufficient to establish an unlawful common policy applicable to all putative class members. Id. The court determined that the affidavits were "bereft of detail in that they hardly addressed the critical issues required." Id. The court was not swayed by one of the plaintiff's personal observations of employees shaving time and her direct knowledge that a manager was aware of the defendant's failure to pay overtime. Id. at *8-*9. Ultimately, the court found that "the plaintiff's allegations did not point to a generally applicable policy relevant to the issues in this case that would create a factual nexus required between the [plaintiffs] and the prospective class." Id. at *9. Clearly, the unsuccessful Kronick plaintiffs presented far more in support of their application for class treatment than that here advanced by plaintiff.

Similarly, in Armstrong v. Weichert Realtors, 2006 U.S. Dist. LEXIS 31351 at *8 (D.N.J. May 19, 2006), the court held that the plaintiff failed to make "a modest factual showing that a class of similarly situated potential plaintiffs exists" and denied the motion for conditional certification. In reaching its decision, the court found that the lone declaration of the plaintiff contained "no factual foundation for the statement that all other loan officers were required to work unpaid overtime." Id. at *4. In addition, the court recognized that,

-14-

other than a conclusory allegation that "human resources policies mandated that loan officers not be paid overtime," there was no evidentiary support for plaintiff's assertions of a wrongful companywide policy affecting all putative class members. Id. at *5.

Here, Reed admits that he has **no personal knowledge** that anyone else in the company was subject to the mistreatment he allegedly experienced. See e.g., Hertzberg Decl., Exhibit A at 35:25-36:3 ("Q. Do you know whether everybody else didn't take their half-hour lunch?  A: No, I didn't know that or not."). Like the Armstrong plaintiff, Reed's affidavit (Exhibit C to Miller Decl.) "offers no factual foundation for the [contentions] that...[all other drivers] were required to work unpaid overtime." Armstrong, 2006 U.S. Dist. Lexis at *5.  "A court may deny plaintiffs' right to proceed collectively if the actions arise from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy or practice." Williams v. Accredited Home Lenders, 2006 U.S. Dist. LEXIS 50653 at *14 (N.D. Ga. July 25, 2006) (citations omitted). The teachings of Armstrong should apply to the "purely personal" proofs presented here.

A decision from the District Court of Minnesota, Saleen v. Waste Management, Inc., 649 F.Supp. 2d 937, 940 (D. Minn. 2009), is most instructive.  In Saleen, employees brought a collective

-15-

action under the FLSA for unpaid overtime, consisting of the automatic deduction of a 30-minute meal break from the employer's time keeping system.  649 F.Supp. 2d. at 940.  As is the case here, the plaintiffs acknowledged that their employer had a process for employees to reverse the meal plan deduction when they worked through lunch.  However, they alleged that the employer enforced an unstated policy that discouraged and refused to honor reversal requests. Id.

In denying conditional certification, the Saleen court found that the employees failed to offer direct evidence that their employer adopted an unstated policy of not paying for worked meal breaks.  Instead, they presented only circumstantial evidence in the form of 112 declarations and a number of depositions alleging that they and their co-workers were pressured to work through meal breaks, without pay, suggesting that a secret policy existed. Id.  The court held that the mere fact that certain employees allegedly did not receive compensation to which they claim they were entitled "provides almost no evidence that the reason that these employees were not paid was because of an unlawful companywide policy." Id. at 941.

If numerous declarations suggesting the existence of an unstated policy proved insufficient in Saleen, there certainly is no basis for certification here, where plaintiff concedes he has no knowledge of any circumstances but his own.

-16-

A Michigan District Court reached a consistent result. In Cason v. Vibra Healthcare, 2011 U.S. Dist. LEXIS 47160 (E.D. Mich. May 3, 2011), the plaintiff nurse alleged that she performed work during meal periods for a hospital but was not paid for such time due to an automatic deduction. She further asserted that other employees suffered the same treatment. The unsupported assertion that other employees worked through meals but were not paid due to the automatic deduction, was insufficient to support conditional certification of a collective action. Id. The court observed that plaintiff Cason had "not identified any other person who claims that her FLSA rights were violated by the automatic meal break deduction policy." Id. at *6. Likewise, Reed concedes that he has no knowledge of anyone else's experience. Accordingly, this matter cannot be certified as a collective action.

Thus, despite plaintiff's speculation that, contrary to Empire's acknowledged policy, there was, in fact, an unstated policy that employees would not be paid for working through lunch, the proofs presented in support of that contention are insufficient as a matter of law. Like the Saleen and Rogers plaintiffs, Reed demonstrates nothing more than the existence of an automatic meal deduction. As discussed infra., nothing about an automatic meal deduction is improper. There is no evidence whatsoever of a companywide "unstated policy." Employees are

-17-

entitled to a half hour unpaid lunch hour, and Reed was responsible for accurately recording his hours. Plaintiff's testimony confirms his understanding that these policies existed. That Reed chose not to utilize the procedure in place to adjust his paycheck when he worked through lunch was a personal decision shedding no light on the experience of any other employee. See Morisky v. Public Service Electric and Gas Company, 111 F.Supp. 2d 493, 497-498 (D.N.J. 2000) (denying issuance of collective action notice where plaintiffs failed to establish a "common scheme" to deny them overtime).

**C.   That Empire May Have Had Access to Information Through Which it Could Conceivably Determine Whether its Employees Were Ignoring Company Policy is Not Relevant to a Class Certification Analysis.**

In an effort to circumvent the problem of the purported class representative having no knowledge that any other potential class member shared his experience, plaintiff must divert the Court's attention from the relevant analysis. Plaintiff resorts to arguing that because Empire may have had access to information through which it arguably could have checked to see if employees were taking lunch, a collective class still can be maintained. In effect, plaintiff contends that if he obtains copies of the GPS records of other employees, he may be able to make a case. Plaintiff misses the mark.

-18-

An employer is obligated to pay only for unreported work time "if the employer knows, or has reason to believe, the employee is continuing to work and the duties are integral and an indispensable part of the employee's principal work activity." Hertz v. Woodbury County Iowa, 566 F.3d 775, 781 (8th Cir. 2009); Guenzel v. Mt. Olive Board of Education, 2011 U.S. Dist. LEXIS 132102 at *8 (D.N.J. Nov. 16, 2011) motion for reconsideration granted by 2012 U.S. Dist. LEXIS 21583 (D.N.J. Feb. 16, 2012). The New Jersey District Court observed that "Where an employer has no knowledge that an employee is engaging in overtime work **and the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of the FLSA."** 2011 U.S. Dist. LEXIS at *8. (Emphasis added)(citation omitted).

Accordingly, to prevail on an overtime claim for unreported hours worked, even on an individual claim, a plaintiff must "present evidence that the work above their scheduled hours was without compensation **and** that the [employer] knew or should have known that they were working overtime." Hertz, 566 F.3d at 781. (Emphasis added). This "constructive knowledge" standard is one of "reasonable diligence" on the part of the employer – "the FLSA's standard for constructive knowledge in the overtime

context is whether the [employer] should have known, not whether it could have known." Id. at 782 (citations omitted).

Plaintiff apparently suggests that instead of relying on its written policy of requiring employees to maintain accurate records, and its acknowledged policy of having employees report when working through lunch, Empire had a duty to scrutinize other data to independently determine whether its employees were being truthful. No such duty exists. Accordingly, the existence of information, such as GPS records, cannot substitute for a plaintiff's lack of knowledge of a supposed widespread unlawful policy.

Courts repeatedly have rejected the notion that employers have a duty to verify the accuracy of their employee statements. For example, in Hertz, the police officer employees reported their working time by signing in on a sheet. 566 F.3d at 779. Officers also could submit slips to report any overtime worked. Id. The county where the employees worked used a computer aided dispatch (CAD) system track which indicated whether they were available for calls. Id. Officers transmitted one code when they began their tour of duty and another code when they completed their tour of duty. Id. at 778-779. The payroll office had access to the CAD records, but did not use them for payroll purposes. Id. at 782.

At the trial level, it was determined that the county had no duty to consult the CAD records when determining the officer's pay. Id. at 781. The plaintiff appealed that ruling. The Eighth Circuit rejected the plaintiff's argument explaining, "it would not be reasonable to require that the county weed through non-payroll CAD records to determine whether or not its employees were working beyond their scheduled hours. This is particularly true given the fact that the county has an established procedure for overtime claims that plaintiffs regularly use." Id. at 782.

Similarly, in Newton v. City of Henderson, 47 F.3d 746 (5th Cir. 1995), the plaintiff police officer submitted written time reports to the city and the city paid him for all hours he reported. Id. at 748. However, after his resignation, the plaintiff demanded payment for additional hours he allegedly worked. Id. The plaintiff claimed that he provided all reports about his daily activities to his supervisor and based on his activities, his supervisor should have known he was working overtime. Id. Plaintiff's supervisors, including the police chief, had access to records that showed the plaintiff's daily activities. Id.

The Fifth Circuit held that "access" to such information did not constitute constructive knowledge that the employee was working overtime. Id. The court stated, "[if] we were to hold

-21-

that the City had constructive knowledge that Newton was working overtime because [the police chief] had the ability to investigate whether or not Newton was truthfully filling out the City's payroll forms, we would essentially be stating that the City did not have the right to require an employee to adhere to its procedures for claiming overtime." Id. at 749.

Thus, an employer is generally entitled to rely on employees to follow company policy, especially, where, as here, the employees are charged with the responsibility of accurately reporting their hours worked and of advising Empire if they worked through lunch.  In essence, plaintiff argues that Empire is required to scrutinize any data available to independently confirm the accuracy of its driver's representations.  As set forth above, this is not the employer's burden.

Plaintiff's strategy to substitute GPS records for personal knowledge is unavailing.  It is uncontroverted that Empire's GPS system is not used to keep track of the hours drivers work, nor is it used by Empire's payroll department.  Moskal Decl., ¶8; Hertz 566 F.3d at 782.

There simply is no competent proof before the Court of a companywide policy to deprive employees of overtime.  Reed must present evidence of a wrongful policy that applied to all employees.  He cannot do so.

> **D.   An Automatic Deduction Policy is Lawful, and Reed Cannot Serve as a Class Representative Because he Failed to Utilize the Procedure in Place for Obtaining Compensation for Working Through Lunch.**

Notwithstanding plaintiff's implication, an employer does not violate the FLSA by automatically deducting for meal breaks. Frye v. Baptist Memorial Hospital, 2010 U.S. Dist. LEXIS 101996 at *15 (W.D. Tenn. Sept 27, 2010) aff'd, 495 Fed. Appx. 669 (6th Cir. 2012). There is no duty to ensure that employees are taking uninterrupted meal breaks. Id.

As long as the employer provides a means through which the employee can obtain compensation for working through lunch (or other overtime), no cause of action lies under the FLSA.

The existence of a procedure for adjusting pay and its impact on the FLSA was addressed in White v. Baptist Memorial Healthcare Corp., 699 F.3d 869, 876 (6th Cir. 2012). The Sixth Circuit said in White that "if an employer establishes a reasonable process for an employee to report uncompensated work time, the employer is not liable for non-payment if the employee fails to follow the established process." Id. The facts of the instant case are not all that different from those in White.

In White, an emergency room nurse did not have a regularly scheduled meal break due to the emergent nature of her work. Ms. White was expected to take a meal break as work demands allowed. The hospital's policy automatically deducted time from

-23-

shifts of six or more hours for an unpaid meal break. The hospital's policy also indicated that if a meal period was missed or interrupted, then the employee would be paid. Baptist instructed employees to record all times spent working during meal breaks in an "exception log." White admitted that, at times, she utilized this avenue to obtain compensation for working through lunch. Id.

Nevertheless, like Reed, White claimed that she stopped logging missed meal breaks, despite Baptist's instructions, and did not use the hospital's procedures to correct payroll errors. She deviated from the hospital's policy because she felt compliance would be "an uphill battle." Id. at 872. In a similar vein, Reed decided, "I'm not going to keep calling every time I need an adjustment made when it was clearly said to me to make sure you take your lunch." Hertzberg Decl., Exhibit A at 48:25-49:3. Like Ms. White, Mr. Reed cannot represent a collective action when he decided to eschew the procedures in place to adjust his compensation. His decision in this regard is a defense to his individual action. Clearly, an individual subject to such a defense cannot serve as a representative of the class here proposed.

**E.    The Need for Individualized Inquiries Confirms That Any Supposed Plaintiffs Are Not Similarly Situated.**

This case involves one individual who concedes he disregarded Empire's policies and practices.  Reed should not be heard to complain about procedures he chose not to follow.  Even though plaintiff has no knowledge of any other employee's experience, he asks this Court to assume, without supporting evidence, that other employees were victims of an unstated, unlawful companywide policy.  In light of this failure of proof, to determine if there was any basis for a collective action, the Court would have to evaluate each Empire drivers' situation. Putting aside the fact that **nobody** has joined this suit, the need to inquire into individual experiences is contrary to the purpose of class certification and further demonstrates that certification of a collective class is improper in this case. Banks v. Radioshack Corp., 2014 U.S. Dist. LEXIS 60794 at *7-*8 (E.D. Pa. April 25, 2014) (denying certification in part because claims would have required individualized calculations for each employee's alleged FLSA violations).

Clearly, certification of a collective action would be inappropriate because of individualized experience and utilization of the adjustment procedure.  There can be no easily ascertained "similarly situated" class where not only must it be determined that each putative plaintiff worked through a meal

-25-

break for which he/she was not compensated, but, the Court also must make individual determinations as to whether and why the employee followed or did not follow the procedures in place for reversal of the automatic deduction.   Plaintiff cannot represent a class where he knows only about his own situation.   See e.g., Verdecchio v. Tri-County Real Estate Maintenance Company, Inc., 2012 U.S. Dist. LEXIS 179337 at *5 (D.N.J. Dec. 19, 2012) ("[W]here, as here, a plaintiff brings suit on behalf of himself and others similarly situated, his Complaint should indicate who the other employees are and explain their entitlement to relief... Plaintiff herein has no knowledge about any other individual's alleged entitlement to relief.").   Id.[4]

---

[4] In addition, individualized treatment is necessary because the FLSA does not require payment for interruptions which are de minimis but only those interruptions which require plaintiffs "to give up a substantial measure of [their] time and effort." Hill v. United States, 751 F.2d 810, 815 (6th Cir. 1984). Performing off-the-clock activities is not in and of itself compensable if it is de minimis.   As a general guideline, ten minutes or less of time, per day, has been considered de minimis.   See Busk v. Integrity Staffing Solutions, Inc., 713 F.3d 525, 532-33 (9th Cir. 2013) (concluding that five minutes spent every day passing through security clearance on the way to lunch break was de minimis).   Examining the de minimis doctrine with respect to each driver's lunch break experience, as well any resulting damages, will require individual determinations for each potential class member.   See, Briggins v. Elwood, 882 F. Supp. 2d 1256, 1276 (with respect to de minimis defense, "this Court cannot discern how the plaintiffs will proceed in this case in a way which does not unduly prejudice the defendants without the case devolving into mini-trials for each plaintiff").

**F.**   **There is no Basis for Extending the Scope of the Supposed Collective Class Beyond the Warehouse at Issue.**

Even if there otherwise were a basis for this Court to grant plaintiff's motion, the motion still would fail because of insufficient numerosity.  Decisional law demonstrates that the scope of the class should be limited to work places about which plaintiff has personal knowledge.  See Pomareda v. Homebridge Mortage Bankers Corp., 2007 U.S. Dist. Lexis 12572 at *6-*7 (S.D. Fla. February 22, 2007) (recognizing that affidavits did not allege basis for personal knowledge about employees in other offices and, therefore, limiting class to one office where plaintiffs worked); West v. Border Foods, Inc., 2006 U.S. Dist. LEXIS 96963 at *19 (D. Minn. June 12, 2006), (plaintiffs failed to demonstrate companywide violations resulting from a common policy when they offered evidence relating to only 6 of 240 shift managers); Tresvant v. Fidelity Employer Services Corp., 434 F.Supp. 2d 40, 51 (D. Mass. 2006) (limiting notice to employees from New Hampshire office where all affidavits were from employees in New Hampshire office, employees did not purport to know policies of other office locations and employees did not show that company's policies regarding classification were companywide); Bernard v. Household International, Inc., 231 F.Supp. 2d 433, 435-36 (E.D. Va. 2002) (concluding plaintiffs

did not satisfy similarly situated requirement beyond the two offices about which plaintiff submitted evidence).

Mr. Reed worked in one office. Even though he concedes that he has no first-hand knowledge of any other employee's circumstance in his office, any class which could be certified would necessarily relate only to employees at that Cinnaminson facility. Reed identifies seven colleagues that worked as delivery drivers while he was at Empire. Since there were never more than 7 to 10 employees at that location (Moskal Decl. at ¶9), joinder rather than class treatment is a superior means of handling the dispute.

<u>POINT II</u>

**PLAINTIFF FAILS TO MEET THE RULE 23
STANDARDS FOR CERTIFYING A CLASS.**

A.   **The Court Must Undertake a Rigorous Analysis in
Determining Whether Plaintiff Has Satisfied All Four
Prerequisites of Class Certification.**

In addition to moving to certify a collective class, plaintiff seeks to certify a class alleging violation of the New Jersey Wage and Hours Law, under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff faces a heavy burden in establishing that he meets all four requirements under Federal Rule of Civil Procedure 23(a) (the "Rule") which provides that:

> One or more members of a class may sue or be
> sued as representative parties on behalf of
> all only if (1) the class is so numerous
> that joinder of all members is

> impracticable, (2) there are questions of law and fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class and (4) the representative parties will fairly and adequately protect the interest of the class.

Plaintiffs also are required to prove that at least one of three subsections of Rule 23(b) has been met. Here, Plaintiff contends that Rule 23(b)(3) applies, which requires Plaintiff to prove that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The burden of establishing all four requisites of Rule 23(a) and at least one part of Rule 23(b) rests squarely with plaintiff. Neal v. Casey, 43 F.3d. 48, 55 (3d Cir. 1995). "Courts must undertake a rigorous analysis to insure that the putative class and its proposed representative satisfy each of the prerequisites to class certification." Morisky v. Public Service Electric and Gas Company, 111 F.Supp. 2d 493, 499-500 (D.N.J. 2000). Accordingly, "the decision to certify a class calls for findings by the court, not merely a threshold showing by a party, that each requirement of Rule 23 is met." In re Hydrogen Peroxide Anti-Trust Litigation, 552 F.3d 305, 309 (3d

-29-

Cir. 2008); Garcia v. Freedom Mortgage Corp., 274 F.R.D. 513, 516 (D.N.J. 2011).

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of" individual parties. Walmart Stores v. Dukes, 131 S.Ct. 2541, 2550 (2011). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable. Id. "Plaintiffs must show that the elements of their claim are 'capable of proof at trial through evidence that is common to the class rather than individual to its members'...[and] the court must envision a trial of plaintiffs' claims and 'conduct a rigorous assessment of the available evidence and the method or methods by which plaintiffs propose to use the evidence to prove their claims.'" Adami v. Cardo Windows Inc., 299 F.R.D. 68, 84 (D.N.J. 2014) (citations omitted). The burden rests with the plaintiff's application to present proofs capable of withstanding the court's rigorous analysis.

Frequently, the required rigorous analysis will entail some overlap with the merits of the plaintiff's claim because the class determination involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. Dukes, 131 Sup. Ct. at 2551-2552. As set forth supra, plaintiff cannot satisfy the less stringent test for

-30-

certification of a collective class.   Accordingly, plaintiff's proofs fall far short of withstanding rigorous analysis.

**B.   Plaintiff Cannot Identify an Ascertainable Class Based on Objective Criteria.**

At the outset, Plaintiff must prove that a proposed class is ascertainable.   This requires proof of two elements.   First, the class must be able to be defined through objective criteria. Second, plaintiff must establish "a reliable and administratively feasible mechanism for determining whether putative class members will fall within the class definition." Cardo Windows, 299 F.R.D. at 84 (citing Hayes v. Walmart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013)).   "If class members are impossible to identify without extensive and individualized fact finding or mini-trials, then a class action is inappropriate." Id.; Marcus v. BMW of North America, LLC, 687 F.3d 583, 593 (3d Cir. 2012); Agostino v. Quest Diagnostics, Inc., 256 F.R.D. 437, 479 (D.N.J. 2009) ("A court must reject the proposed class or subclass definition that inextricably intertwines identification of class members with liability determinations.") (citations omitted).

Here, for its state law claim, plaintiff seeks to certify a class of all drivers working in New Jersey.   Again, plaintiff claims that each employee in the proposed class was subject to a supposed companywide unlawful policy. Under these circumstances,

-31-

the court would be required to analyze the merits of each employee's claim against Empire.    This precludes certification of any class.

Specifically, there is no proof of any unlawful rule uniformly applied to all drivers that they should not take a meal break.    Although disputed, plaintiff maintains that he was subject to such treatment.    No other employee advances a similar contention, even though drivers at the Cinnaminson warehouse from which plaintiff was based are aware of this suit.[5]

His co-workers contradict Reed's version of the facts. However, at this stage, the accuracy of this discrepancy should not be the focus.    Rather, Reed's divergence from the testimony of his former colleagues underscores the need for case by case analysis of each potential plaintiff's unique circumstance.

For example, Mr. Reed contends that he was "singled out" in that he was required to drive the most difficult routes. Hertzberg Decl., Exhibit A at 36:21-23 ("singled out"); 47:20-24 (his route was "more demanding" than those of other drivers).

---

[5]    Far from supporting Reed, his colleagues' declarations contravene his allegations.    Each affiant maintains that he or she was aware of Empire's policy of **requiring** employees to take a bona fide meal break.    See, e.g., Miller Decl., Exhibit N, Declaration of Ken Tongue at ¶5.    They each acknowledge the existence of a procedure through which they could report that their compensation should be adjusted in circumstances such as working through lunch. Id. ¶9.    Finally, they indicate that, on occasion, they did not take their meal break and, in violation of company policy, chose not to report when they did so. Id. ¶7.

He also admits that toward the end of his employment he developed a "personality conflict" with his supervisor. Id. at 36:24-37:4. Not every worker at Empire was "singled out," had "the most demanding route" or had a "personality conflict" with his supervisor. To reach behind all evidence of record to determine if there exists any claim other than that asserted by the unique plaintiff would require individualized treatment. The ascertainability standard is not satisfied.

### C. Plaintiff has Failed to Establish That He Has Met the Requirements of Rule 23(a).

#### 1. The proposed class lacks numerosity and plaintiff has failed to prove that joinder of potential class members would be impractical.

In order to satisfy the numerosity requirement, Plaintiff also must show by a preponderance of the evidence that the proposed class "is so numerous that joinder of all members is impractical. Fed. R. Civ. P. 23(a)(1). Courts within the Third Circuit generally hold that the numerosity requirement is not satisfied when there are less than forty potential class members. Marcus v. BMW of North America, LLC, 687 F.3d 583, 595 (3d Cir. 2012) (numerosity requirement is not met when Plaintiff failed to present evidence of more than 40 potential class members); Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp., 149 F.R.D. 65, 74 (D.N.J. 1993) (holding that potential class of

38 members was "not so large as to preclude joinder of all potential Plaintiffs").

Insofar as Plaintiff concedes he knows of no other persons who might have a claim and/or who suffered the same mistreatment he alleges, plaintiff fails to demonstrate that the joinder of members of a proposed class "is so inconvenient or difficult that class certification is required". Liberty Lincoln, 149 F.R.D. at 74 (finding that "whether viewed as a potential class of 38 or 123 members, this number is not so large as to preclude joinder of all potential Plaintiffs"). In fact, it appears that, even if there were a basis for maintaining a suit based on a common theme, there were never more than approximately ten drivers at the Cinnaminson's warehouse during Plaintiff's tenure there. See Moskal Decl. at ¶9.

## 2.   The potential class lacks commonality.

"Commonality requires the Plaintiff to demonstrate that the class members have suffered the same injury . . . . This does not mean merely that they have all suffered a violation of the same provision of law." Walmart Stores, Inc. v. Dukes, 131 Sup. Ct. 2541 (2011). Third Circuit courts consider Rule 23(a), as a requirement to be incorporated into the more stringent Rule 23(b)(3) predominance requirement and therefore deem it appropriate to analyze the two factors together with particular focus on predominance. Sullivan v. DB Investments, Inc., 667

-34-

F.3d 273, 297 (3d Cir. 2011).   As will be detailed <u>infra</u>, plaintiff has failed to pass the predominance test under <u>Rule 23(b)(3)</u>.   <u>See</u> discussion at Point II(D).   Plaintiff likewise fails to meet the commonality requirements of <u>Rule 23(a)</u>.

### 3.   Plaintiff does not satisfy the typicality requirement insofar as he faces unique defenses.

Plaintiff's individual claim against Empire is atypical of the proposed class, rending this action inappropriate for class certification.

In evaluating typicality, the analysis focuses on (1) the similarity of the legal theory and legal claims; (2) the similarity of the individual circumstances on which those theories and claims are based; and (3) the extent to which the proposed representative may face significant, unique or atypical defenses to her claim.   <u>In re Schering-Plough ERISA Litigation</u>, 589 F.3d 585, 597-98 (3d Cir. 2009).   A proposed class is not typical under <u>Rule 23(a)(3)</u> if the representative is subject to a unique defense.   <u>In re Schering-Plough</u>, 589 F.3d at 585 (citations omitted).

Here, plaintiff's decision to purposefully eschew utilizing an acknowledged method of redress can prove fatal to a claim based on an automatic meal deduction.   <u>See White v. Baptist Hospital</u>, 699 F.3d 869, 876 (6th Cir. 2012).   Plaintiff maintains that he drove a more demanding delivery route than his

-35-

colleagues and that he was "singled out" by management.   See Id.
at 36:21-23; 46:2-22.   His circumstance is unique.   He is
subject to personal defenses.   There is no typicality.

        **4.   Plaintiff    is    not    an    adequate    class
            representative.**

    The adequacy requirement has two components.   First, the
Court considers whether a plaintiff's attorney is qualified,
experienced and able to conduct the litigation.   In re
Prudential Insurance Company American Sales Practice Litigation
Agent Actions, 148 F.3d 283, 312 (3d Cir. 1998).   Second, it
considers whether any conflict of interest exists between the
plaintiff and the proposed class.   Id.   Defendant does not
question counsel's ability to handle this matter.   However,
plaintiff is not an adequate class representative.

    Significantly, Mr. Reed has no interest in the rights of
his co-workers.

        **Q.   If you received those monies that you
        believe you are entitled to, would you
        continue this case?**

        **A.   Probably not.**

Hertzberg Decl., Exhibit A at 23:22-25. (Emphasis added).

    Plaintiff is not a suitable class representative.[6]

---

[6] Moreover, plaintiff's record at Empire was spotty, at best.   On
at least two occasions he was warned for "forgetting" to deliver
monies he received from customers.   Hertzberg Decl., Exhibit A
at 64:11-65:12; 73:14-25.

**D.    Certification    Under    Rule    23(b)(3)    Would    Be Inappropriate Because Individual Issues Predominate.**

A class cannot be certified under Rule 23(b)(3) unless the plaintiff proves that "the questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiff can prove neither.

**1.    Individual issues predominate.**

The predominance requirement tests whether proposed classes are sufficiently cohesive to warrant class adjudication.  In re Hydrogen Peroxide Anti-Trust Litigation, 552 F.3d. 305, 310-11 (3d Cir. 208).  The standard is far more demanding than the commonality requirement of Rule 23(a).  Id.  If the essential elements of liability require individualized proof, class certification is unsuitable.  Id.  Moreover, even if common evidence may establish liability, certification must be denied where damages are not "capable of measurement on a class-wide basis."  Therefore, "questions of individual damage calculations will inevitably overwhelm questions common to the class."  Comcast v. Behrend, 133 Sup. Ct. 1426, 1432-33 (2013).  As noted supra, each potential class member will have a unique experience

with Empire's automatic deduction policy such that each individual likely will require separate evaluation.

### 2. Individualized damages questions will predominate.

The highly individualized nature of the damages inquiry in this case also precludes a finding of predominance. In Comcast v. Behrend, the court explained that courts must "take a close look" at whether individualized damage questions predominate over common liability issues. Id. at 1432. The Comcast court held that a class was improperly certified because the plaintiffs "fell far short of establishing that damages are capable of measurement on a class wide basis" and, as a result, "questions of individual damage calculations will inevitably overwhelm questions common to the class." Id. at 1433. Each putative plaintiff will have a unique damage calculation based on his or her own experience with utilizing the adjustment procedures provided and how that impacts their quantum of damages.[7]

---

[7] In addition, plaintiff cannot make a credible claim that a class action is the best available method for the fair and efficient adjudication of the controversy. Plaintiff's proposed class effectively requires the court to hold individual trials to determine liability and damages. Certification would promote neither fairness nor justice. See Merlo v. Federal Express Corp., 2010 U.S. Dist. LEXIS 56108 at *27-*28 (D.N.J. June 7, 2010) (holding that class litigation was not superior to other methods of adjudication where deposition testimony established that resolution of unpaid worker claims would require individualized inquiries as to each class member's work for

-38-

**E.    Issues of Notice Should be Deferred.**

Should this Court determine that certification is warranted, defendant respectfully requests that issues of notice to the putative class be addressed separately. Defendant objects, first and foremost, to the three-year span plaintiff proposes to utilize for purposes of notice and discovery. The statute of limitations for an FLSA action is two years. 29 U.S.C. §255(a). It is only when there is a finding of willfulness that a three-year statute of limitations will be applied. Here, a two-year span would be appropriate because plaintiff has no knowledge of willful misconduct, and Empire is entitled to rely on its employees to accurately report their hours. The time frame for notice should be addressed in a separate application.

---

defendant). In any event, the small number of potential plaintiffs from the Cinnaminson location demonstrates that joinder would be a superior means of adjudicating this dispute.

3088062.1

## CONCLUSION

Plaintiff attempts to bootstrap an individual claim into a wide ranging collective/class action.  This Court should reject plaintiff's bid to make this suit into something it is not. Plaintiff's motion for collective and class certification should be denied.

GREENBAUM, ROWE, SMITH & DAVIS LLP
Attorneys for Defendant


By   s/Richard L. Hertzberg
     RICHARD L. HERTZBERG

Dated: October 6, 2014