IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JASON REED<br><br>   Plaintiff,<br><br> v.<br><br>EMPIRE AUTO PARTS, INC., *et al.*<br><br>   Defendants. | CIVIL ACTION NO.: 1:13-cv-05220-RMB-AMD |

**NAMED PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT OF NAMED PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE AND CLASS ACTION CERTIFICATION**

**INTRODUCTION**

  Named Plaintiff Reed's Motion for Conditional Collective and Class Certification asserts that Defendants violated the FLSA by utilizing a uniform and unlawful pay policy whereby Defendants failed to pay Named Plaintiff Reed and his fellow Drivers 30 minutes of compensable time each shift due to automatic deductions for meal breaks which were not taken. In Defendants' Opposition Brief, Defendants either fail to properly address or refute the arguments for certification Named Plaintiff Reed made in his initial memorandum of law. Accordingly, Named Plaintiff Reed will not rehash the arguments made in his initial memorandum of law. However, Defendants' erroneous presentation of the law and facts bears some comment, hence this reply brief.

1

I. ARGUMENT

    a. **Plaintiffs' Have Met Their Burden Of Making a "Modest Factual Showing" that Similarly Situated Employees Exist**

Defendants misstate the record while touting Named Plaintiff Reed's alleged lack of information regarding whether his fellow Drivers took meal breaks. While the nature of the work performed by Named Plaintiff Reed and his fellow Drivers prevented Named Plaintiff Reed from witnessing his co-workers' meal habits on a daily basis, his deposition testimony provides sufficient evidence of similarly situated individuals at this initial stage:

    BY MR. HERTZBERG (counsel for Defendants):

        **Q:** Did you ever see people taking their lunch at the warehouse in between runs?

        **A:** Yes, if you want to call it a lunch, yeah.

        **Q:** Okay. Why do you say that?

        **A:** Because, you know, **you see people going in to sit down with their cooler and they eat and they go right back to work loading their truck, filling their paperwork out. I'm talking about a total of 10 minutes max.**

        Q: Did you ever try to take your lunch at the warehouse?

        A: I've sat down a few times and did that same thing, real quick if I packed something, but like I said, you know, **it was less than 10 minutes.**

*See* Declaration of Richard L. Hertzberg ("Hertzberg Decl."), Exhibit A, at pp. 43:19-44:8. (Emphasis added).

Moreover, Named Plaintiff Reed testified that a co-worker, Jose Colon, was disciplined for making an unauthorized stop in order to take a meal break. Per Named Plaintiff Reed, Mr. Colon came out of a closed-door meeting and complained out loud to his fellow drivers that he had been disciplined for spending too much time at a certain stop. Mr. Colon had been eating his meal during the stop in question and had spent less than 30 minutes at the location. *Id*. at pp. 34:19-35:9.

Finally, it bears repeating that five out of Defendants' six declarants swore that they did not report missed meal breaks to Defendants and that they skipped meal breaks in order to finish their routes faster. *See* Statement of Facts ¶¶ 39-41. While the declarants unsurprisingly state that they see nothing wrong with Defendants' policies, the fact that none of them have ever reported a missed meal break speaks many times louder. Named Plaintiff Reed's allegation that Defendants' maintain an unwritten policy of discouraging Drivers from taking meal breaks provides an explanation of the declarants' curious refusal to recover wages owed to them. While General Manager Steve Moskal's ("GM Moskal") assertions that he constantly advises Drivers to report missed meal breaks rings hollow. *See* Declaration of GM Moskal.

Accordingly, Named Plaintiff Reed has met his burden of providing the "modest factual showing" that he is similarly situated to other Drivers.

> **b. Defendants' GPS Policy Supports Named Plaintiff Reed's Allegation That Defendant Maintained a Company-wide Policy of Deducting From Drivers' Wages for Meal Breaks They Did Not Take.**

The record in this matter undisputedly shows that Named Plaintiff Reed and at least five other employees of Defendants (the five declarants) suffered deductions for meal breaks that they did not take. *See* Statement of Facts ¶¶ 19, 29, 30, 33. The record also establishes that Defendants maintained a policy of tracking, to the second, the movements of Named Plaintiffs and the Drivers while they were working their routes. Finally, the record shows that GM Moskal reviewed GPS data pursuant to issuing Named Plaintiff Reed disciplinary actions. Miller Decl., Exhibit L. The issue here is not, as Defendants argue, whether Defendants had actual or constructive knowledge of uncompensated hours worked by employees. That is a question of merits and the Court does not consider the merits of a plaintiff's claim at this stage of the certification process. *Scott v. Bimbo Bakeries, USA, Inc.*, 2012 U.S. Dist. LEXIS 26106, at *23

3

(E.D. Pa. 2012).  The issue is whether the evidence of Defendants' GPS policy and GM Moskal's review of GPS records may be viewed by this Court as evidence "of a factual nexus between the manner in which the employer's alleged policy affected [the plaintiff] and the manner in which it affected other employees." *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011) *reversed on other grounds*.

This Court should conclude that such evidence does satisfy Named Plaintiff Reed's burden to "make a modest factual showing."  GM Moskal is Defendants' Chief Operations Officer and has, at all relevant times, been responsible for calculating and paying the wages of Named Plaintiff Reed and the Drivers.  *See* Declaration of GM Moskal; Miller Decl., Exhibit I at No. 4.  The fact that GM Moskal regularly reviews data showing exactly how much time Drivers spend driving, idling, or stopped coupled with the fact that none of Defendants' declarants stated that they ever reported missed meal breaks to Defendants supports Named Plaintiff Reed's allegation that Defendants maintained a company-wide policy of deducting for meal breaks Drivers do not take.  "An employer who knows or should have known that en employee is or was working overtime must comply with the provisions of the FLSA." *Guenzel v. Mount Olive Bd. of Educ.*, 2011 U.S. Dist. LEXIS 132102, at *8 (D.N.J. 2011).  "An employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, **even if the employee does not make a claim for the overtime compensation**." *Id*. *quoting Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 ((th Cir. 1981).  Notably, while Defendants provided six declarations from current employees, Defendants neglected to provide any evidence showing that Drivers regularly use Defendants' alleged policy for reporting missed meal breaks to get their pay corrected.  In this way, the present matter is distinguishable from *Hertz v. Woodbury County*, as the police officers

4

"regularly used" the defendant's written procedure for reporting their hours worked. *Hertz*, 566 F.3d 775, 782 (8th Cir. 2009). While merits discovery has not been conducted yet, so far the record undisputedly shows that Drivers did not regularly use Defendants' alleged reporting policy. Moreover, the use of the records in question in *Hertz* is clearly different than Defendants' use of their GPS records. In *Hertz*, only the county's dispatchers used the Computer Aided Dispatch ("CAD") records. *Id*. The dispatchers used the CAD records to know which officers were available to respond to an emergency. *Id*. In contrast, Defendants used the GPS records to track Named Plaintiff Reed's and the Drivers' how long they spent stopped at any one location. *See* Statement of Facts ¶¶ 19, 29, 30, 33. Notwithstanding GM Moskal's assertion that he did not review GPS records for payroll purposes, the fact remains that he did review the GPS records for the purpose tracking Drivers' time. *Id*.

Accordingly, this Court should find that Named Plaintiff Reed has made a modest factual showing that Defendants' alleged policy affected Named Plaintiff Reed in the same manner that it affected other employees.

### CONCLUSION

Wherefore, for the reasons set forth above, and in Plaintiff's Motion for Conditional Collection and Class Action Certification, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion.

Respectfully Submitted,

*/s/ Matthew Miller*
Matthew D. Miller, Esq.
Justin L. Swidler, Esq.
**SWARTZ SWIDLER, LLC**

Date: October 27, 2014