NOT FOR PUBLICATION                    [Docket No. 18]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| JASON REED,<br><br>    Plaintiff,<br><br>                    v.<br><br>EMPIRE AUTO PARTS, INC., et al.,<br><br>    Defendants. | Civil No. 13-5220 (RMB/AMD)<br><br>**OPINION** |

Appearances:

Matthew Miller, Esq.
Swartz Swidler, LLC
1878 Marlton Pike East, Suite 10
Cherry Hill, NJ 08003
     Attorneys for Plaintiff

Richard Hertzberg, Esq.
Greenbaum, Rowe, Smith & Davis LLP
P.O. Box 5600
Woodbridge, NJ 07095
     Attorneys for Defendant

**BUMB**, UNITED STATES DISTRICT JUDGE:

     This matter comes before the Court upon a motion by

Plaintiff, Jason Reed ("Reed"), seeking to conditionally certify

a collective action pursuant to the Fair Labor Standards Act

("FLSA"), 29 U.S.C § 216(b).  Reed also moves to have this

matter certified as a class action pursuant to Federal Rule of

Civil Procedure 23(b)(3) for violations of the New Jersey Wage

1

and Hour Law, N.J.S.A. 34:11-56a et seq. ("NJWHL").  For the reasons set forth below, the Plaintiff's motion is denied in its entirety.

I.   Background

Plaintiff's Employment

Reed worked for the Defendant ("Empire") in Cinnaminson, New Jersey as a full-time delivery driver from April 2010 until February 2013, when he was terminated after being involved in an accident while speeding.  Pl.'s Statement of Facts ("SOF") at ¶ 1 & Def.'s Br. at 2.  During his time working for Empire, Reed was a non-exempt, hourly employee who earned a base hourly rate between $12.00 and $13.75 per hour.  Pl.'s SOF at ¶¶ 2-3.

The Employee Handbook

Per Empire's employee handbook, the normal work schedule for drivers is 8 hours a day, 5 days a week.  Pl.'s Ex. E.  In addition, "drivers . . . are provided with a 30 minute unpaid lunch break for meals during each work period."  Id.  Empire automatically deducted the 30 minute unpaid meal break from the calculation of compensable time.  Pl's SOF at ¶ 14.  At all relevant times, Reed's work periods were scheduled to last 8.5 hours, comprised of 8 work hours and 30 minutes for an unpaid meal break.  Id. at ¶ 10.  Reed states that the other drivers in Cinnaminson worked similar schedules.

Empire's handbook provides that "[a]ccurately recording time worked is the responsibility of every non-exempt employee." Pl.'s Ex. E.  In addition, the terms of the handbook dictate that "[n]on-exempt employees should accurately record the time they begin and end their work, as well as the beginning and ending time of each meal period."  Id.  Finally, the handbook states that employees would receive overtime compensation "at one and one-half times their straight time rate for all hours worked in excess of 40 hours per week."  Id.  Reed states that when he "worked over 40 hours in a workweek (exclusive of the 2.5 hours per week that [Empire] designated as unpaid meal breaks and deducted from his total hours), [Empire] paid [him] overtime wages of one and one-half times his regular rate for each hour he worked in excess of 40."  Pl.'s SOF at ¶ 15.

Process for Missed Meal Breaks

Reed states that he and other drivers employed at Empire's Cinnaminson warehouse regularly worked more hours than the 40 hours per week for which they were scheduled to work, Pl.'s SOF at ¶¶ 15-16, and that he "rarely, if ever took an uninterrupted, 30-minute meal break."  Id. at ¶ 19.  Empire contends that all drivers were advised to take their lunch break and that Empire has a procedure through which a driver can have his paycheck adjusted in the event that the driver fails to take a lunch

break.   Defs.' Br. at 3-4.   More specifically, drivers were to inform Chief Operations Officer, Steve Moskal, when they did not take their break so that their compensation could be adjusted to reflect the actual work performed.   Id. at 4.   Empire contends that the drivers were repeatedly advised that they should take their lunch break.   Moskal Decl. at ¶ 3.   Reed asserts that the policies "requiring" drivers to take lunch or to inform Empire that such breaks were not taken are not in the Empire handbook. Pl's SOF at ¶¶ 37 & 38.   During his deposition, however, Reed admitted that he was aware of the procedure for calling Moskal when he skipped his lunch break and that his paycheck was adjusted for working through lunch when Reed informed Moskal that he had skipped lunch.   Defs.' Ex. A, Pl.'s Dep. at 31:19-23; 48:11-22.[1]   Reed further stated that there were times when he worked through lunch and did not inform his supervisors.   Id. at 48:11-14.   Finally, Reed testified that he did not know of any other driver who did not take his lunch break.   Id. at 35:25-36:3.[2]

---

[1]     Q: When you called up and advised that you had skipped lunch, who did you call?
        A. I spoke with Steve
        Q. Steve Moskal?
        A. Yes.
Pl.'s Dep. at 31:19-23.

[2]     Q: Do you know whether everybody else didn't take their half hour lunch?
        A: No, I don't know that or not.

4

Empire's GPS System

Empire has a policy that prohibits its drivers from using company vehicles for "personal use of any kind" "at any time." Pl.'s Ex. D.  Reed was issued two warnings in 2012 for making stops not related to his delivery schedule.  Pl.'s Ex. L.  Reed contends that he did not have sufficient time in his schedule to complete all his stops and take his 30 minute lunch break and that Empire is able to determine whether its drivers in fact took their breaks because all of the vehicles driven by Reed and other drivers were equipped with GPS tracking to record, inter alia, the drivers vehicle location, time spent driving, time stopped, and speed.  Pl.'s SOF at ¶¶ 19 & 35.  Because of the presence of the GPS units, Reed avers that "Defendants were able to easily determine whether [the drivers] took an uninterrupted 30-minute meal break while they were out on their routes." Id. at ¶ 20.  In contrast to Reed's position, Mr. Moskal wrote in his declaration that Empire does not utilize or check GPS records in connection with payroll.  Moskal Decl. at ¶ 8.

Declarations of Other Drivers

In conjunction with the instant motion, the parties have provided this Court with the sworn declarations of five other delivery drivers, Pl.'s Ex. N, and the sworn declaration of

supervisor and driver Jeffrey Bealer.  Pl.'s Ex. O.  The sworn

declarations state, in relevant part, as follows:

- Drivers Michael Diamante and Kenneth Tongue declared:
  - o "I have always been instructed to take my thirty-minute meal break."
  - o "I have never heard of drivers being instructed to not take their thirty-minute meal break, or being disciplined for taking a thirty-minute meal break."
  - o "Occasionally, I will skip my thirty-minute meal break, voluntarily, so that I can finish my route faster. In those instances, I have not reported this to my supervisors."
  - o "I have never had any issue with Empire compensating me and paying me overtime."
- Driver David Pierce declared:
  - o "I have always been instructed to take my thirty-minute meal break."
  - o "Occasionally, I will skip my thirty-minute meal break, voluntarily, so that I can finish my route faster and get home sooner."
  - o "If I do take my thirty-minute meal break, and arrive back at the Cinnaminson office later than the time I am supposed to, I am paid overtime."
  - o "I have never had any issue with Empire compensating me and paying me overtime."
- Drivers Jeffrey Jones and Kurt Loescher declared:
  - o "I have always been instructed to take my thirty-minute meal break."
  - o "Occasionally, I will skip my thirty-minute meal break, voluntarily, so that I can finish my route faster. In those instances, I have not reported this to my supervisors."
  - o "I have never had any issue with Empire compensating me and paying me overtime."
- Jeffrey Bealer declared:
  - o "I have always instructed the delivery drivers to take their thirty-minute meal break."
  - o "I have always been instructed to take my thirty-minute meal break."
  - o "I have never heard of drivers being instructed to not take their thirty-minute meal break, or being disciplined for taking a thirty-minute meal break."

> o "I generally take my thirty-minute meal break,
>   but, occasionally, I will skip my thirty-minute
>   meal break, voluntarily, so that I can finish my
>   route faster. In those instances, I have not
>   reported this to my supervisors."
> o "I have never had any issue with Empire
>   compensating me and paying me overtime."
> o "I have never heard of delivery drivers, other
>   than Jason Reed, complaining that they were not
>   allowed or not supposed to take a thirty-minute
>   meal break."

<u>Plaintiff's Complaint</u>

Pursuant to his Complaint filed with this Court, Reed
contends that Empire violated the FLSA and "New Jersey Wage
Laws" by failing to pay Reed and other drivers overtime.  Pl.'s
Ex. A at Counts I-III.  Plaintiff seeks to assert claims on
behalf of himself and "all persons presently and formerly
employed by [Empire] as delivery drivers or in positions with
similar duties subject to [Empire's] unlawful pay practices and
policies . . . and who worked for [Empire] at any point in the
three years preceding the date the instant action was initiated
. . . ."  Pl.'s Ex. A. at ¶ 12.[3]  The gravamen of Reed's
Complaint is that "Defendants automatically deducted 30 minutes
from each shift worked by Class Plaintiffs despite not
permitting Class Plaintiffs to take bona fide meal breaks[.]"
<u>Id.</u> at ¶ 25.

---

[3] That said, Reed only identifies seven other drivers with whom
he worked in the Cinnaminson warehouse.  Pl.'s Br. at 4.

II.   <u>Standard of Review</u>

     *a. FLSA Conditional Certification*

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." <u>Genesis Healthcare Corp. v. Symczyk</u>, 133 S. Ct. 1523, 1527 (2013).  Under 29 U.S.C. § 216(b), the FLSA authorizes employees to bring a claim on behalf of other employees "similarly situated" who were affected by an employer's common policy. <u>White v. Rick Bus Co.</u>, 743 F. Supp. 2d 380, 386 (D.N.J. 2010). Unlike class actions subject to Federal Rule of Civil Procedure 23, where each person within the class is presumed to be a member of the class unless he "opts-out," collective actions under the FLSA require members of the class to "opt-in" to a civil action.  <u>See</u> 29 U.S.C. § 216(b); <u>Ornelas v. Hooper Holmes, Inc.</u>, No. 12-3106, 2014 U.S. Dist. LEXIS 172162, at *5 (D.N.J. Dec. 12, 2014).

In determining whether a suit should proceed as a collective action under the FLSA, most courts utilize a two-tiered analysis. <u>Symczyk v. Genesis HealthCare Corp.</u>, 656 F.3d 189, 192 (3d Cir. 2011), <u>rev'd on other grounds</u>, 133 S. Ct. 1523 (2013); <u>Ornelas</u>, 2014 U.S. Dist. LEXIS at *5.  During the first stage of the analysis, the court "makes a preliminary

8

determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." Id. at 192-193 (citations omitted). "At the step-one inquiry, the Court does not weigh the evidence, resolve factual disputes, or reach the merits of Plaintiff's claims . . . . The Court does not, however, review Plaintiff's evidence in a vacuum. It reviews Plaintiff's evidence in light of the evidence submitted by Defendants." Holley v. Erickson Living, 11-2444, 2012 U.S. Dist. LEXIS 70335, at *4 n.4 (E.D. Pa. May 21, 2012).

To determine whether the proposed recipients of opt-in notices are similarly situated,[4] the Third Circuit utilizes a "modest factual showing" standard. Symczyk, 656 F.3d at 192 (stating that the modest factual showing standard "best comports with congressional intent and with the Supreme Court's directive that a court 'ascertain[ ] the contours of [a collective] action at the outset'")(quoting Hoffmann–La Roche, 493 U.S. at 172)). This modest factual showing analysis is performed using a

---

[4] The Third Circuit applies an ad-hoc approach in determining whether proposed collective plaintiffs are similarly situated. See Zavala v. Wal-Mart Stores Inc., 691 F.3d 527, 536 (3d Cir. 2012). Factors relevant to this ad hoc analysis include, but are not limited to, whether the plaintiffs are employed in the same corporate department, division and location; advance similar claims; seek substantially the same form of relief; and have similar salaries and circumstances of employment. Id. at 536-37.

lenient standard, but "a plaintiff must [still] produce some evidence 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." Id. (citing Smith v. Sovereign Bancorp, Inc., No. 03-2420, 2003 U.S. Dist. LEXIS 21010, at * 3 (E.D. Pa. Nov. 13, 2003)); Zavala, 691 F. 3d at 537 n.4.

"The underlying question is the extent to which the claims of the putative class can be proven through common evidence, versus individualized testimony." Banks v. RadioShack Corp., No. 13-685, 2014 U.S. Dist. LEXIS 60764, at *5 (E.D. Pa. Apr. 25, 2014). A plaintiff's "[u]nsupported assertions of widespread violations are not sufficient." Evancho v. Sanofi-Aventis U.S. Inc., No. 07-2266, 2007 U.S. Dist. LEXIS 93215, *8 (D.N.J. Dec. 19, 2007). Specifically, a plaintiff cannot rely solely on the allegations in the complaint, and must instead provide factual support in the form of pleadings, affidavits, deposition testimony, or other supporting documents. See Anyere v. Wells Fargo Co., No. 09-2769, 2010 WL 1542180, at *2 (N.D. Ill. Apr. 12, 2010) ("A 'modest factual showing' . . . cannot be founded solely on allegations in the complaint; some factual support must be provided, such as in the form of affidavits, declarations, deposition testimony, or other documents.").

While there exists a "modest" standard at this stage, "courts have not hesitated to deny conditional certification when evidence is lacking." Rogers v. Ocean Cable Group, Inc., No. 10-4198, 2011 U.S. Dist. LEXIS 149197, at *8 (D.N.J. Dec. 29, 2011)(quotations and citations omitted).  If, however, the plaintiff carries his burden at this juncture, "the court will 'conditionally certify' the collective action for the purposes of notice and pretrial discovery." Symczyk, 656 F.3d at 192-93.

> b. Rule 23(b)(3)

In order to proceed as a class action under Federal Rule of Civil Procedure 23, the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3) must be met.

> To satisfy Rule 23(a)[:] (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

Marcus v. BMW of North America, LLC, 687 F.3d 583, 590-91 (3d Cir. 2012)(citing In re Cmty. Bank of N. Va., 622 F.3d 275, 291 (3d Cir. 2010)); See Fed. R. Civ. P. 23.  Moreover, Rule 23 (b)(3), the basis for certification in the instant matter, "requires that (i) common questions of law or fact predominate (predominance), and (ii) the class action is the superior method

11

for adjudication (superiority)." Id. "Class certification is only proper 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." In re Hydrogen Peroxide Litigation, 552 F.3d 305, 309 (3d Cir. 2008)(quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982)). When performing this rigorous analysis, "the court cannot be bashful. It 'must resolve all factual or legal disputes touching on elements of the cause of action.'" Marcus, 687 F.3d at 591 (quoting Hydrogen Peroxide, 552 F.3d at 307), and, "[f]requently, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. '[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551–52 (2011)(alteration in original)(quoting Falcon, 457 U.S. at 160). In addition, "[f]actual determinations supporting Rule 23 finings must be made by a preponderance of the evidence, and the burden of proof rests on the movant." Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 354 (3d Cir. 2013)(internal quotations and citations omitted).

III. <u>Analysis</u>

    *a. FLSA Conditional Certification*

As set forth above, while the threshold for conditional certification is modest, at this stage Reed must, nevertheless, demonstrate that he is similarly situated to the other employees enumerated in the Complaint and provide evidence beyond mere speculation of a "factual nexus between the manner in which the employer's alleged policy affected [him] and the manner in which it affected other employees." <u>Symczyk</u>, 656 F.3d at 192. Reed has failed to meet this burden.

Reed argues that all drivers are subject to the same policy of automatically deducting the meal break period and the prohibition of personal use of Empire's vehicles. From the interplay of these policies, Plaintiff asks this Court to infer that Empire's "meal break policy is a sham and has resulted in [Empire] knowingly failing to pay overtime wages in violation of the FLSA." Pl.'s Br. at 17. Plaintiff supports this argument with his own declaration and the other driver declarations,[5] who stated they occasionally skipped meal breaks to finish their

---

[5] In addition to the declaration, Reed argues that his co-worker Jose Colon "was disciplined for making an unauthorized stop to take a meal break," Pl.'s Br. at 2, but has provided no evidence in support thereof other than Reed's own testimony – <u>i.e.</u>, there is no declaration or deposition testimony of Colon in support of this averment.

routes faster and did not notify management when they skipped the break. Reed then asks this Court to draw another inference that, because of the declarations regarding unreported, skipped meal breaks, Empire maintains "an unwritten policy of discouraging [d]rivers from taking meal breaks [as] an explanation of the declarants' curious refusal to recover ages owed to them." Pl.'s Reply Br. at 3.

Finally, Reed contends that the presence of GPS in the drivers' vehicles to track their routes is sufficient to constitute evidence of the requisite "factual nexus" between Empires policies and the effect of those policies on him and on other drivers. Pl.'s Br. 4. In other words, Reed argues that Moskal was responsible for calculating and paying wages of the drivers and he reviewed the GPS data to determine if drivers were using vehicles in an unauthorized manner. According to Reed, this fact, coupled with the driver declarants stating that they did not report occasional skipped meal breaks, "supports . . . Reed's allegation that [Empire] maintained a company-wide policy of deducting for meal breaks [d]rivers do not take." Pl.'s Reply. Br. at 4. In addition, Reed points to the fact that Empire did not provide evidence showing that the drivers regularly used Empire's "alleged policy for reporting missed

meal breaks to get their pay corrected" in support of the necessary factual nexus.  Reply Br. at 4.

In response, Empire contends that conditional certification is inappropriate as Reed cannot demonstrate that he is similarly situated to other drivers as evidenced by his own testimony. For example, when asked whether he knew if the other drivers did or did not take their half hour lunch, he responded, "No, I don't know that or not."  Def.'s Ex. A, Pl.'s Dep. at 35:25-36:3.  Moreover, Empire contends that Reed's speculation that there is an unstated policy that drivers will not get paid for skipped meal breaks is insufficient.  An automatic meal deduction is not, per se, unlawful,[6] and Reed has failed to present evidence of the alleged unstated policy.  The fact that Reed chose not to tell his supervisors that he skipped meal breaks and have his time adjusted accordingly sheds no light on the experience of other drivers.  Instead, it was Reed's individual decision to not comply with the policy.  See Def.'s Ex. A, Pl.'s Dep. 48:25-49:3 ("I'm not going to keep calling every time I need an adjustment made when it was clearly said to me make sure you take your lunch.").  Finally, with respect to

---

[6] Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2007-INA (May 14, 2007) ("[T]he [automatic deduction policy] does not violate the FLSA so long as the employer accurately records actual hours worked, including any work performed during the lunch period.").

Reed's GPS arguments, Empire contends that there is no evidence that Empire knew or should have known that drivers were skipping breaks and failing to notify Empire as the GPS data was not used for payroll purposes.

This Court agrees that conditional certification is inappropriate in the instant case.  If anything, Plaintiff's arguments, briefs and, most importantly, his deposition, only serve to highlight the fact that he is not similarly situated to other drivers and that he lacks sufficient knowledge, and certainly evidence, demonstrating that he is similarly situated to other drivers.  First, in his deposition, Plaintiff appeared to be unclear even as to the basis of his claims:

> Q: It's your position, sitting here today, that you're owed overtime for having to work through lunch.  Is that right?
> A: Not necessarily.  It's just it was as many hours that I worked during the week. If it's, you know, already at 40 and I didn't work through the lunch, then, obviously that would be in the overtime favor.
> Q: Well, that's what you're saying happened, right?
> A: I guess, yeah.

Def.'s Ex. A, Pl.'s Dep. 33:7-17.  In addition, Reed freely admitted that he was not sure whether or not other drivers did nor did not take their half hour lunch.  Id. at 44:6-12 ("Q: I mean, do you know for a fact that other people didn't take a half hour lunch in the warehouse?  A: I don't know that for a fact, no.").  Moreover, Reed's own testimony supports the conclusion that he viewed his own situation as different from

16

other drivers – e.g., his routes were unique and that he had a personality conflict with this supervisor, Jeffrey Bealer.  See Def.'s Ex. A, Pl.'s Br. at 46:24-47:24.[7]  Finally, while Reed claims he failed to report skipped lunch breaks due to Empire's alleged unwritten policy against taking such breaks, he stated at his deposition that the one time he could remember skipping lunch and reporting it, an adjustment was made to his paycheck. Id. at 48:15-20 ("The one that I can remember calling Steve [Moskal] and saying that I worked through lunch, he made the adjustment.").  Certainly, this admission undermines the existence of the alleged unwritten policy.

While other drivers may occasionally have skipped the lunch break and did not report it to obtain a payroll adjustment, those same drivers made clear that they each "have never had any issue with Empire compensating me and paying me overtime," unlike Reed's allegation.  Again, this fact highlights Reed's unique situation.  Moreover, this Court will not draw the

---

[7] Q: "[D]id you feel that your routes were different from the other drivers?
A: I felt they weren't switched up enough as they should be.  I mean that's kind of like where the personality conflict with Jeffrey Bealer came in.
             * * *
Q: Okay. So just so I understand, did you feel that your route in general was more demanding than some of the routes that other drivers were running?
A: Yes."

extremely attenuated inference Reed advances – i.e., that somehow the reason these other declarants failed to report their occasionally skipped meal breaks was because of an unwritten Empire policy preventing drivers from taking lunch breaks. There is no evidence to support the existence of such a policy other than Reed's own averments.  The only policies supported by any evidence are the handbook policies, which provide drivers with a 30 minute meal break and require the drivers to keep accurate track of their time worked, including meal periods.[8] Reed has, admittedly, unsufficient knowledge with respect to other drivers, and relies assumed facts rather than the requisite factual nexus.  In light of the above, certification in inappropriate.  See Asirifi v. West Hudson Sub-Acute Care Center, No. 11-4039, 2014 U.S. Dist. LEXIS 9281, at *7 (D.N.J. Ja. 24, 2014)(denying conditional certification where the plaintiffs asserted that defendant regularly deducted thirty minute meal break regardless of whether such a break was taken, and stating that "the alleged application of a uniform policy does not, without more, show that potential class members are similarly situated."); Rogers v. Ocean Cable Group, Inc., No.

---

[8] See Pl.'s Ex. E, stating that "[a]ccurately recording time worked is the responsibility of every non-exempt employee[,]" and that "[n]on exempt employees should accurately record the time they begin and end their work, as well as the beginning and ending time of each meal period."  Id.

10-4198, 2011 U.S. Dist. LEXIS 149197, at *11 (D.N.J. Dec. 29, 2011)(denying conditional class certification where plaintiffs had no personal knowledge of whether other technicians worked in excess of a 40 hour week and where plaintiffs sought to rely on assumed facts); Armstrong v. Weichert Realtors, No. 05-3120, 2006 U.S. Dist. LEXIS 31351, at *4 (D.N.J. May, 19 2006)(refusing to conditionally certify class where evidence in support was the plaintiff's declaration and court was unable to determine whether plaintiff "actually knew other particular officers who were required to perform unpaid overtime work, and what he knew specifically about their unpaid work."); see also, Saleen v. Waste Management, Inc., 649 F. Supp. 2d 937, 941 (D. Minn. 2009)(finding, in case where drivers alleged that their employer maintained an unwritten policy of refusing to reverse an automatic thirty-minute meal deduction even where drivers worked through that time, that "there mere fact that a small fraction of employees allege that they did not receive the compensation to which they were entitled provides almost no evidence that the reason that these employees were underpaid was because of an unlawful company policy.")[9]

---

[9] Even assuming, *arguendo*, that this Court found Reed's arguments more persuasive, Reed has failed to demonstrate that his allegations extend to others outside of his warehouse. He has not testified as to the circumstances of drivers beyond his warehouse and has provided no declarations or evidence with

Reed's attempt to rely on the presence of the GPS devices in the drivers' trucks is similarly unsuccessful.  Reed contends that the fact that "Moskal regularly reviews data showing exactly how much time Drivers spend idling, or stopped coupled with the fact that none of the . . . declarants state that they ever reported missed meal breaks to [Empire] supports . . . Reed's allegation that [Empire] maintained a company-wide policy of deducting for meal breaks Drivers do not take."  Pl.'s Reply Br. at 4.  Reed, however, has not presented <u>any</u> evidence, nor has he even argued, that the GPS data was used in disciplining another drivers for taking their lunch breaks, again, failing to satisfy the modest factual showing that Reed is similarly situated to the drivers.[10]  Moreover, the drivers' declarations in no way support Reed's contention; while a few of the declarants stated they occasionally skipped a break to finish faster and did not report it, there is no evidence whatsoever that this was influenced by an unwritten policy or because of the GPS tracking.

---

respect to drivers beyond those working in the Cinnaminson warehouse.

[10] Reed does state that another driver, Jose Colon, was disciplined for making an authorized stop to take his meal break, but, again there is no declaration from Mr. Colon and no averment that the GPS data was used in relation to this alleged discipline.  <u>See</u> Defs.' Ex. A, Pl.'s Dep. at 34:16-35:9.

In making the argument that Empire knew or should have known that employees were not taking their meal breaks and failing to report the same, Reed asks this Court to make another attenuated inference: that Empire reviewed all GPS data to determine payroll accuracy even though the unrefuted declaration of Moskal states that the GPS records were not used for payroll purposes and the handbook makes clear that it is the duty of the drivers to keep accurate time records, including time spent on meal breaks.  See Moskal Decl. at ¶ 8; Pl.'s Ex. E ("[n]on-exempt employees should accurately record the time they begin and end their work, as well as the beginning and ending time of each meal period.").  Reed's proposed inferences are further undermined by the declaration of driver David Pierce, which states, in relevant part: "If I do take my thirty-minute meal break, and arrive back at the Cinnaminson office later than the time I am supposed to, I am paid overtime."  Pl.'s Ex. N. Again, Reed has failed to show he is similarly situated to other drivers such as Pierce.

Finally, this Court finds that the plain terms of Empire's written policies, which provide drivers with a 30 minute break, yet prohibit personal use of vehicles, should be read in harmony and not in the tortured fashion that Reed supports.  Clearly, Empire wasn't allowing and prohibiting drivers from eating lunch

21

in the same document.   Reed urges a nonsensical reading of
Empire's policies, which is, again, unsupported by any evidence
that other drivers experienced a similar impact of those
policies.   Therefore, for the reasons set forth above, this
Court finds that Reed has failed to "produce some evidence
'beyond pure speculation,' of a factual nexus between the manner
in which the employer's alleged policy affected [him] and the
manner in which it affected other employees."   <u>Symczyk</u>, 656 F.3d
at 192.

  *b. Fed. R. Civ. P. 23(b)(3)*

 For reasons similar to those discussed above, this Court
finds that Reed's request to certify a class pursuant to the
more stringent Rule 23(b)(3) analysis similarly fails.   <u>See</u>
<u>e.g.</u>, <u>Grayson v. K Mart Corp.</u>, 79 F.3d 1086, 1096 (11th Cir.
1996)(noting that the similarly situated requirement for FLSA
collective actions is "considerably less stringent than the
requirement of [Rule 23(b)(3)] that common questions
predominate.").

 As an initial matter, this Court notes that in Plaintiff's
reply brief, he does not even address any of Empire's arguments
against Rule 23(b)(3) class certification.   Even so, this Court
has reviewed the arguments set forth in Plaintiff's moving

papers and finds that Reed has failed to meet the requisite commonality and predominance elements.[11]

Commonality under Rule 23(a) requires the Plaintiff to demonstrate that his claims depend upon a common contention. Dukes, 131 S. Ct. at 2551.  "That common contention, moreover, must be of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id. (emphasis added). In other words, what matters to class certification is not the raising of common questions "but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  Id. (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).

---

[11]   Because class certification fails on multiple grounds, this Court need not reach the issues of numerosity, typicality or adequacy.  See Dukes, 131 S. Ct. at 2251, n. 5 ("In light of our disposition of the commonality question . . . it is unnecessary to resolve whether respondents have satisfied the typicality and adequate-representation requirements of Rule 23(a)"); Eastman v. First Data Corp., No. 10-4860, 2013 U.S. Dist. LEXIS 107163 at *29 (D.N.J. July 31, 2013) ("Because of the lack of commonality, the Court need not reach the other Rule 23(a) questions of typicality and adequacy of representation or Rule 23(b).").

In addition to the requirements of Rule 23(a), Reed must
also satisfy the predominance requirement of Rule 23(b)(3).
Pursuant to Rule 23(b)(3), a class action may only be maintained
if:

> the court finds that the questions of law or fact common to
> class members predominate over any questions affecting only
> individual members, and that a class action is superior to
> other available methods for fairly and efficiently
> adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3)'s predominance
criterion is even more demanding than Rule 23(a)." Comcast
Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013). Where, as in
this matter, "an action is to proceed under Rule 23(b)(3), the
commonality requirement [of Rule 23(a)] is subsumed by [Rule
23(b)(3)'s] predominance requirement." Danvers Motor Co., Inc.
v. Ford Motor Co., 543 F.3d 141, 148 (3d Cir. 2008) (internal
quotations and citations omitted). Thus, this Court will focus
its analysis on the whether Reed has satisfied Rule 23(b)(3)'s
requirements -- namely, whether "the element of [the legal
claims are] capable of proof at trial through evidence that is
common to the class rather than individual to its members."
Hydrogen Peroxide, 522 F.3d at 311-12.

With respect to commonality, Reed contends that Empire's
uniformly applied pay policies resulted in Empire failing to pay
drivers overtime in violation of the NJWHL, and thus the common

24

question as to all putative class members is whether the drivers were denied compensation as a result of the policy of automatically deducting 30 minutes of paid time for meal breaks that were not taken.  With respect to predominance, Reed simply states: "the claim that [Empire] failed to pay Named Plaintiff Reed and putative class members wages for all hours worked is a common issue that predominates over any hypothetical individual issues."  Pl.'s Br. at 25.  He further states that the GPS tracking units can be used to calculate damages.

For reasons set forth above, the only evidence presently before the Court points to Reed's unique situation as compared with other drivers.  Again, Reed testified that he was uncertain whether other drivers took their lunch break, Pl.'s Dep. at 35:25-36:3, and the other declarants made clear that they, unlike Reed, "have never had any issue with Empire compensating [them] and paying [them] overtime."  See Pl.'s Ex. N.  If anything, the difference between Reed's experience and that of the other drivers underscores the fact that Reed cannot demonstrate that "the element of [the legal claims are] capable of proof at trial through evidence that is common to the class rather than individual to its members."  Hydrogen Peroxide, 522 F.3d at 311-12.  The necessarily individualized nature of the inquiry needed into each driver's individual circumstances with

25

respect to breaks taken or not taken and the reasons therefore precludes the requisite finding of commonality and predominance. Cf. Jarosz v. St. Mary Medical Center, 10-3330, 2014 U.S. Dist. LEXIS 13218, at *29 (E.D. Pa, Sept. 22, 2014)(denying Rule 23(b)(3) certification in an automatic meal deduction case where the Court found individual issues would predominate over common questions).[12]  As such, Reed's request for certification pursuant to Federal Rule of Civil Procedure 23(b)(3) will be denied.


III. Conclusion

        For the reasons stated above, Plaintiff's motion is denied in its entirety.  An appropriate Order will issue this date.


                        s/Renée Marie Bumb
                        RENEE MARIE BUMB
                        United States District Judge

Date: February 23, 2015

---

[12] Notably, the Jarosz court stated "[a]lthough the automatic [meal] deduction policy is common to all class members, it is not central to the validity of the state law claims . . . . There are significant differences as to whether, why and how often individual class members worked through meal breaks. . . . These differences illustrate that whether and how often potential class members worked through meal breaks would be an individualized inquiry, rather than a common one.").